CHRISTIANSEN, Executrix, Respondent, vs. ÆTNA CAS-
UALTY & SURETY COMPANY and another, imp., Appel-
lants.

*March 9—April 7, 1931.*

For the appellants there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

For the respondent there was a brief by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *Mortimer E. Walker* and *Harold J. Sporer.*

OWEN, J.   While the defendant Richard Schenkenberg was driving the automobile of the defendant Edward Kratz on the 30th day of May, 1928, in Racine county, he collided with the automobile of plaintiff's decedent, causing his death, to recover damages for which this action was brought. Judgment was rendered against the defendant Richard Schenkenberg and the defendant insurance companies. The action was dismissed as to the defendant Kratz.   This appeal presents no challenge to the judgment as against Richard Schenkenberg.   Neither his negligence nor his liability is controverted.   The sole question presented is whether the insurance companies are liable upon their indemnity or insurance policies issued to the owner of the car, Edward Kratz, not only to indemnify him but any other person driving the car with his consent.

It is conceded that Kratz was the owner of the car.   It is conceded that at the time of the accident it was driven by the defendant Richard Schenkenberg.   It is conceded that the defendant Kratz was not present at the time of the accident and that the car was not driven in the prosecution of his business.   The sole question is whether the evidence supported the finding of the jury that at the time of the

accident Richard Schenkenberg was driving the car with the express or implied consent of the owner, Edward Kratz. This question was sharply contested on the trial.

It appears that Edward Kratz was a brother of the widowed mother of the defendant Richard Schenkenberg. For a number of years he had boarded with her in her home in the village of Waterford. She had two sons, Richard and Forrest. Some years ago Kratz bought a Buick car and kept it in his sister's barn. Up to about eighteen months prior to the accident, his nephews Richard and Forrest frequently drove the car with his consent. Kratz claims that at about that time and ever since he declined them permission to drive the car. In corroboration of this claim he testified that he went to Colorado during the month of January, 1928, at which time he dismantled the car with a view of preventing its use by his nephews. He took out the battery, and took some other equipment from the car, which he hid in various places with the thought that they would be unable to find the same, rendering the use of the car by them impossible. He returned in March, when he restored the accessories and equipment to the car, but gave orders to Richard Schenkenberg not to use the car. There is testimony that in order to prevent its use by Richard Schenkenberg he locked the door of the barn, removed the spark plug, and chained the rear wheels. Mrs. Schenkenberg, the mother of Richard, testified that Kratz had ordered Richard to leave the car alone and not to use it, and the testimony of Richard himself tends to corroborate the testimony of Kratz and his mother.

If there were no other testimony in the case the testimony of these three witnesses would be conclusive that prior to the accident Kratz had given Richard positive instructions not to use the car. However, there is testimony in the case by numerous residents of the village of Waterford that during all of this time Richard customarily and frequently

drove the car, many of them testifying that to their knowledge he drove it once or twice a week. They saw him driving it as frequently as once or twice a week during the time that it is claimed he was under orders to leave it alone. This testimony was admissible as establishing custom or usage in the nature of general consent.

While in general outline the testimony of Kratz was positive that he had forbidden Richard using the car, there are some things in the testimony of Kratz himself not entirely consistent with this attitude. Kratz had a talk with Richard the evening after the accident. According to his own testimony, Richard wanted him to get another tire for the car so that he could go out again that evening. Kratz said that he told Richard "that car isn't going out tonight if I have anything to say about it." The fact that Richard felt free to ask Kratz to get another tire for the car so that he could take it out again that evening is hardly consistent with Kratz's professed attitude. He testified that he told him about two weeks before the accident not to drive the car, but he admits that he saw him driving it after that time and said nothing to him about it. Two witnesses testified that when interviewed by the plaintiff's attorney as to whether he had given Richard permission to use the car on this occasion, Kratz replied, "he took it as he always does." This statement made by Kratz at that time is entirely consistent with a usual custom on the part of Richard to take the car whenever he wanted to, with the knowledge and consent of Kratz. There is further testimony that Kratz himself drove the car very little; that he had driven it only once or twice during the last year, yet it was kept in condition for use and was continually used by Richard.

It is contended by the respondent that this continued and customary use of the car by Richard gave rise to a permissible inference that such use was by and with the consent of Kratz. In this we concur. If there were no other

evidence in the case, the reasonable inference to be drawn from this persistent use of the car by Richard would be that such use was by and with the consent of Kratz. Conceding that these circumstances justify the inference of consent, the positive testimony to establish a contrary conclusion cannot destroy the probative force of such circumstances. Such evidence might overcome them, might outweigh them, but it cannot take them out of the case. No matter what evidence is placed on the other side of the scales, this evidence remains, and all of the evidence in the case must be weighed and balanced by the jury. *State v. Hintz,* 200 Wis. 636, 229 N. W. 54. A determination of the weight of evidence is a jury function. "If there was any evidence warranting submission of the question to the jury, there is enough to support the finding on appeal." *Imperio v. State,* 153 Wis. 455, 459, 141 N. W. 241. Under these circumstances the jury was not bound to believe the testimony of Kratz or the other witnesses who testified that Kratz had instructed Richard not to use the car. The jury had a right to take all of the circumstances into consideration and conclude that the continued use of the car by Richard must have been with the knowledge of Kratz, and that if such use was not with the express or tacit or implied consent of Kratz, he could have found some way of preventing its use. This conclusion finds much direct support in the authorities. *Jensen v. Fischer,* 134 Minn. 366, 159 N. W. 827; *Landry v. Oversen,* 187 Iowa, 284, 174 N. W. 255; *McDonough v. Vozzela,* 247 Mass. 552, 142 N. E. 831; *Kavale v. Morton Salt Co.* 329 Ill. 445, 160 N. E. 752; *Denison v. McNorton,* 228 Fed. 401.

Appellants rely upon *Hopkins v. Droppers,* 191 Wis. 334, 210 N. W. 684, and *Bro v. Standard Acc. Ins. Co.* 194 Wis. 293, 215 N. W. 431. In the former case there was no evidence which cast doubt upon the testimony to the effect that the father had forbidden his son using the motorcycle. It

was regarded as a verity in the case. The question of whether the motorcycle had been used by the son with the consent of the father was not in issue. It was not submitted to the jury. The question there was whether the father was guilty of negligence contributing to the accident in not doing more to restrain his son from using the motorcycle. In the latter case it was held that the undisputed evidence did not show a consent to the use of the car. In those cases the evidence did not make a jury issue. In this case the evidence permits of inferences inconsistent with the claim that Kratz forbade the use of the car by Richard. These inferences are of real probative force and made an issue for the jury.

While we conclude that the finding of the jury on this question has sufficient support in the evidence, we realize that there is much evidence to support a contrary conclusion, for which reason we must scrutinize the record carefully for prejudicial error. There are many errors in the record. For instance, Richard was asked if he had permission to take the car on the day of the accident, and he answered "No, sir." This was stricken as a conclusion. While in an ultra-refined technical sense it may be a conclusion to say that one did or did not have permission, in a practical sense it is the statement of a plain fact. It is frequently made use of in common parlance, has a well understood meaning, and the refusal to permit a witness to testify that he had permission to use the car is, as expressed by Professor Wigmore (3 Wigmore, Ev. (1904 ed.) p. 1960), to make him dumb under the law.

In *Trowbridge v. Sickler,* 54 Wis. 306, at p. 309 (11 N. W. 581), this court said:

"Possession of movable personal property, like that in question, is, as a general thing, a question of fact so far as to be testified to by a witness. It may, in a strict sense, be

regarded as a conclusion from several facts. But counsel was at liberty to cross-examine the witness, and force him to state just what particular facts he regarded as constituting such possession. It may be that what he called possession would not in law be regarded as possession, but that would not be a ground for striking out the answer; for one of the purposes of cross-examination is to detect and expose the fallacy of statements made on direct examination. For similar reasons we think the court was justified in disregarding the objection to the striking out the answer, 'It was given to her.' "

A witness should be permitted to express himself in language customarily and usually used in common parlance, and time should not be unnecessarily wasted without any good purpose by compelling a maneuver in the form of circumlocution to reach a definite and inevitable destination. If the witness uses such a term loosely or in an ambiguous sense, disclosure of that fact may be left to cross-examination.

Questions were propounded to the defendant Kratz tending to elicit the amount of property owned by the defendant Richard Schenkenberg and his mother. While the court ruled that this character of evidence was not material to the issue, the result of this line of questioning indulged in by plaintiff's counsel, when taken in connection with the arguments made in behalf of its materiality, gave the impression that neither Richard nor his mother owned any property, and that damages would have to be recovered from the insurance companies. Certainly this did not help the insurance companies' case.

Plaintiff indulged in the further line of questions propounded to Kratz in which it was assumed that Kratz might have secured insurance indemnifying only himself at a less premium, thus insinuating that he purchased the policies and paid therefor a greater premium than necessary to protect

others who might be driving his car. This was prejudicial, as the statute, sec. 204.30 (3), requires such a provision in all similar policies issued in this state, and as a matter of fact Kratz could not have secured a policy protecting only himself at a lesser premium. The effect of this insinuation thus injected into the case could not but prejudice the defendant insurance companies.

The appellants requested the court to instruct the jury as follows:

"If you find from the evidence that within a reasonable period immediately preceding May 30, 1928, Edward Kratz repeatedly forbade Richard Schenkenberg to use the automobile in question, but that nevertheless Richard Schenkenberg persistently disregarded Edward Kratz's requests and instructions, such disregard of such instructions on the part of Richard Schenkenberg will not justify you in answering question No. 7 Yes."

The following instruction was also requested by the appellants:

"It was not incumbent upon Edward Kratz, in the event that Richard Schenkenberg was using the automobile contrary to Edward Kratz's wishes and against his instructions, that he physically restrain the use of such automobile. If you find from the evidence that by word and conduct on the part of Edward Kratz it was apparent that he did not consent to the use of his automobile by Richard Schenkenberg, then you will answer question No. 7 No, notwithstanding any testimony that Richard Schenkenberg wilfully used the automobile without Edward Kratz's consent and contrary to his wishes."

While the court did give to the jury certain instructions requested by the appellants that implied consent means a consent which, though it may not be fully expressed in words, is, nevertheless, a genuine agreement of the parties and is implied only in that it is to be inferred from the conduct of the parties instead of their spoken words, and that

such consent could not be implied from the conduct of Richard Schenkenberg alone, and that they must find that Kratz did some act which indicated that he did so consent, and that there must be a connection between such act on the part of Kratz and the conduct of Richard Schenkenberg, we nevertheless think that the state of the evidence in this case entitled the appellants to the further elucidation which the refused instructions would have afforded. It was important that the jury thoroughly understand that the use of the automobile by Richard over the objections and against the will of. Kratz could not be construed as consent on the part of Kratz to the use of the automobile by Richard. The instructions given did not sufficiently emphasize this point to relieve from error the refusal to give the other instructions above quoted. In view of the state of the evidence in the case, it seems to us that a contrary conclusion might probably have been reached by the jury upon the merits of this issue had these errors not occurred, for which reason a new trial should be ordered.

*By the Court.*—Judgment reversed, and cause remanded for a new trial upon the issue only of the liability of the defendants and appellants Ætna Casualty & Surety Company and Ætna Life Insurance Company for the damages resulting from the use of the automobile described in the complaint by the defendant Richard Schenkenberg at the time and place of the injury complained of, as already found by the jury.