SUNSHINE MUTUAL INSURANCE CO.,
a foreign corporation, Plaintiff,

v.

Walter MAI, Richard Mai, Elsie Peterson
and Arthur S. Peterson, Defendants.

Civ. No. 48.

United States District Court
D. North Dakota,
Southwestern Division.

Feb. 2, 1959.

Alvin C. Strutz, of Strutz, Jansonius & Fleck, Bismarck, N. D., for plaintiff.

P. W. Lanier, Jr., of Lanier, Lanier & Knox, Fargo, N. D., for defendants Elsie Peterson and Arthur S. Peterson.

No appearance for either of defendants Walter Mai or Richard Mai.

REGISTER, Chief Judge.

The trial judge makes the following Findings of Fact and Conclusions of Law:

Findings of Fact

1. Plaintiff, a foreign corporation, is a citizen and resident of the State of South Dakota, with its home office and principal place of business located in the City of Sioux Falls, South Dakota. Said

plaintiff is authorized to do and is doing business in the State of North Dakota.

2. Defendant Walter Mai is a resident and citizen of the State of North Dakota; defendant Richard Mai is a resident and citizen of the State of Montana; and defendants Elsie Peterson and Arthur S. Peterson are citizens and residents of the State of Minnesota.

3. The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000. (The complaint in this action was filed on January 10, 1958.)

4. An actual controversy of a justiciable nature exists as to the rights and liabilities of the respective parties under the contract of liability insurance here considered.

5. On or about April 14, 1956, plaintiff insurance company issued its policy number 2–15259–1 insuring a certain 1949 Oldsmobile sedan, and naming as the insured defendant Richard Mai. Said policy of insurance contained provisions, among others, for indemnifying the named insured (Richard Mai) on account of bodily injury or property damage occasioned by the use or operation of said automobile. Said policy also contained the usual "omnibus clause" insuring, in addition to the named insured, "any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is * * *" with the permission of the named insured.

6. Prior to the accident hereinafter described, said policy of insurance had never been cancelled, transferred or assigned.

7. On August 20, 1956, at approximately 7:30 P.M. and at a point approximately one mile east of the City of Garrison, North Dakota, on North Dakota state highway number 37, defendant Walter Mai, while driving the automobile described in the insurance policy above referred to, was involved in a collision with another automobile then owned and being driven by defendant Arthur S. Peterson and in which defendant Elsie Peterson was then riding. As a result of said accident, defendants Elsie Peterson and Arthur S. Peterson sustained personal injuries, and both automobiles involved were severely damaged.

8. On or about August 22, 1956, Walter Mai went to a Mr. Harmon (an insurance agent located in Garrison, North Dakota), who completed a formal notice of such accident, based upon the information furnished by Walter Mai, and such notice (Plaintiff's Exhibit 1) was forthwith mailed to the plaintiff, and such notice was received by plaintiff. This was the only notice of such accident received by plaintiff.

9. The accident was investigated by Mr. Walter Link, highway patrolman for the State of North Dakota.

10. Walter Mai made inconsistent statements concerning the ownership of the automobile, both before and after the accident. He informed his employer, prior to the accident, that he had bought the automobile from Richard; he made similar statements to Mr. Link and to Mr. Harmon (as appears on Exhibit 1); later he stated that he did not know who owned the automobile at the time of the accident, and in his deposition taken on October 11, 1957, he stated that Richard is the owner of the automobile involved.

11. Within a short time (approximately one month) after purchasing the automobile and after the issuance of the insurance policy, Richard left North Dakota, and secured employment and established his residence in the State of Montana; at the time of his departure from North Dakota he left said automobile with his brother, Ted, at the latter's residence.

12. The automobile was left with Ted for the latter's use, without restriction as to business or pleasure.

13. Within a few days after Richard left this state, Walter obtained the automobile from Ted, with the latter's permission, and thereafter, until the time of the accident, used and operated it as his own and for his sole purposes and objects. After obtaining possession of the automobile, and prior to the acci-

704

dent, Walter made four monthly install-
ment payments on the purchase price
of the automobile.

14. At the time of the accident, the
named insured, Richard Mai, was the
owner of the automobile involved herein.

15. At the time of the accident, the
use of the automobile by Walter was not
with the express permission of Richard.

16. At the time of the accident, the
use of the automobile by Walter was not
with the implied permission of Richard.

17. The use of the automobile by
Walter was solely in his own behalf; he
was using it solely for his own purpose.

18. The possession, use, control over,
and operation of the automobile by Wal-
ter was without the actual or implied
knowledge, consent or acquiescence of
Richard.

19. Richard did not authorize or
grant permission to Ted to transfer pos-
session of said automobile from Ted's
possession to Walter for the latter's use,
and Ted did not have authority to grant
or give permission to Walter to use said
automobile.

### Discussion

This action is brought by plaintiff un-
der the provisions of Title 28, Section
2201, U.S.C.A., commonly referred to as
the Federal Declaratory Judgment Act,
for the purpose of construing certain
provisions of the insurance policy issued
by plaintiff, and of determining the
rights and liabilities thereunder of the
parties to this action.

Plaintiff submits four grounds as basis
for its contention that there is no cover-
age under the policy. They are as fol-
lows:

"I. The operation of the insured
automobile by the Defendant Walter
Mai was not covered under the pro-
visions of the policy.

"II. The failure of the insured to
give Notice of Loss.

"III. The sale or assignment of
the insured interest under the policy
voids the policy.

"IV. Failure of the insured to
assist and cooperate with the Plain-
tiff Company voids the policy."

Plaintiff's first contention is that the
accident-driver, Walter Mai, was not, at
the time of the accident, insured under
the omnibus provisions of the policy.
Defendants contend that, under the de-
cision of the North Dakota Supreme
Court in Persellin v. State Automobile
Insurance Association, 75 N.D. 716, 32
N.W.2d 644, Walter Mai was, under such
omnibus provision, insured. It is con-
ceded by both parties that the Persellin
case is the only pronouncement of the
Supreme Court that may be helpful.
Plaintiff contends that the facts are so
dissimilar that the Persellin decision is
not applicable; defendants contend it is
controlling.

A careful reading of the "Syllabus by
the Court" in the Persellin case discloses
specifically and clearly the Court's de-
cision. In the Persellin case, the insur-
ance company contended that, as the
actual operator of the motor vehicle at
the time of the accident was driving
without the knowledge or permission of
the named insured, he was not an addi-
tional insured within the provisions of
the "omnibus clause". It was the
Court's view that the evidence in that
case established that the use of the auto-
mobile by the accident-driver was a use
permitted by the named insured. In the
opinion, the Court says: "The only con-
dition here is that the use of the car
must be with the permission of the
named insured. If that condition is met
then the user of the car and any person
legally responsible for its use are addi-
tional insured persons and entitled to the
protection of the policy." Hence the test
is—was the use of the automobile at the
time of the accident with the permission
of the named insured?

It is conceded that, in the instant
case, there was no express permission by
the named insured. However, it is the
general rule that such permission may be
express or implied (in the absence of ex-
press prohibition). American Casualty

Co. of Reading, Pa. v. Windham, D.C., 26 F.Supp. 261, affirmed, 5 Cir., 107 F.2d 88; Hodges v. Ocean Accident & Guarantee Corp., 66 Ga.App. 431, 18 S.E.2d 28.

■ Implied permission "involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent. An implied permission is not, therefore, confined alone to affirmative action." State Farm Mutual Automobile Ins. Co. v. Cook, 186 Va. 658, 43 S.E.2d 863, 867, 5 A.L.R.2d 594.

"And it (permission) may arise from a course of conduct pursued with knowledge of the facts for such time and in such manner as to signify clearly and convincingly an understanding consent which amounts in law to a grant of the privilege involved." United Services Automobile Ass'n v. Preferred Acc. Ins. Co. of New York, 10 Cir., 190 F.2d 404, 406.

■ In order to support an inference that one had the implied permission to use the assured's automobile for his own pleasure and purposes, there must be evidence tending to show a course of conduct or practice known to the owner and acquiesced in by him or by someone having authority to give permission. Brochu v. Taylor, 223 Wis. 90, 269 N.W. 711. See also: Hinton v. Indemnity Ins. Co., 175 Va. 205, 8 S.E.2d 279, and Note at 5 A.L.R.2d 608, 610.

It is unfortunate that, in determining this critical issue, the Court does not have the benefit of the testimony (either in person or by deposition) of either Richard (the named insured) or Ted (the permittee). Hence, this issue must be determined in accordance with what the Court deems to be the fair and reasonable inferences from the evidence.

"It has generally been held that where A, the owner of an automobile, gives general permission to B to use the automobile and B gives permission to C to use the automobile solely for C's purpose, benefit, or advantage, and the automobile is involved in an accident while being so used by C, such use is not with the permission of the named insured." Samuels v. American Automobile Ins. Co., 10 Cir., 150 F.2d 221, 223, 160 A.L.R. 1191, (quoted with approval in United Services Automobile Ass'n, supra, and referred to therein as being the general rule).

During the trial Plaintiff's Exhibit No. 11 (which is a signed but unsworn statement made by Richard Mai) was received over objection. At the time such statement was made, counsel for defendants was not present, and of course there was no opportunity to examine or cross-examine the maker thereof, at time of trial. The contents of such statement will receive no consideration by the Court in its determination.

From the evidence the Court is satisfied that for some time prior to Richard's departure from this state he had not seen or conversed or communicated with his brother, Walter, although they were residing within a comparatively short distance from each other; that Richard left the automobile with his brother, Ted—with permission for Ted to use it for both business and pleasure; that Ted had no permission, express or implied, to permit its use by Walter; that the transaction or agreement between Ted and Walter whereby Walter came into the actual possession of such automobile, and used it as his own, was unknown to Richard and was without his consent or acquiescence, and that the actual use by Walter at the time of the accident was solely for his own purposes and not for any purpose of either Richard or Ted.

Counsel for defendants may argue that some of the circumstances, such as the brother relationship between Richard, Ted and Walter, the departure from the state of Richard, and the latter's leaving the automobile with Ted (who then had an automobile) constitute a basis for an inference that Ted was authorized to permit the use of the automobile by Walter. The Court is of the opinion that a contrary inference is more reasonable.

The evidence discloses that all three brothers lived within a comparatively

short distance from the others. It can reasonably be inferred that each was somewhat familiar with the circumstances of the others. The evidence establishes that, at the time Richard left the state, Ted had an automobile and Walter had none; doubtless this fact was known to Richard. It is also established that sometime prior to such departure Walter had an automobile, was involved in an accident with it, and thereafter rented or borrowed cars. It would reasonably be inferred that, had Richard desired to permit the use of his automobile by Walter, he would have done so directly. Also, the Court gives significance to the very apparent mental condition and stature of Walter—apparent from the inconsistent statements made by him prior to trial, which are in the record, and some patently incorrect answers in his deposition (Plaintiff's Exhibit No. 9), and also apparent from the unsatisfactory testimony of Walter on the witness stand during trial, indicating a lack of normal powers of comprehension and certainly unreliability and lack of normal ability to cope with business matters. It can reasonably be assumed that Richard was familiar with the characteristics and abilities of his brother, Walter, and that the same were taken into consideration in determining the disposition of his automobile.

There is absolutely no evidence that Ted made a report to Richard as to the transaction with Walter, or that Richard had knowledge thereof, or that, in fact, any communication of any kind occurred between Richard and Ted after Richard's departure. The evidence establishes as a fact that there were no communications between Walter and Richard.

Defendants cite in support of their contention Odden v. Union Indemnity Company, 156 Wash. 10, 286 P. 59, 72 A.L.R. 1363. In this opinion the following appears:

" 'The named assured' who loans the automobile to another and consents to its operation by him personally *and by others will*, for the purposes of provisions of an automobile liability policy, extending its benefits to persons operating the car with his permission, be deemed to have permitted its use by a third person with the permission of the first borrower." (Emphasis added.) The Court thereafter refers to the findings of the trial judge, supported by the evidence, that the loan of the car by the named assured to one H vested the latter full power not only to use it personally for his own business and pleasure, but also full power to permit its use by others for their own business and pleasure. Of course, under such facts, the conclusion logically and properly followed.

Also, defendants refer to the case of Glens Falls Indemnity Co. v. Zurn, 7 Cir., 87 F.2d 988, 989, as support for their contentions. However, the Court there was of the opinion, from the evidence, that the father (named insured) consented to the use of the automobile in the joint enterprise of his son and two other young men (one of whom was the operator at the time of the accident), and specifically states: "He (the father) must have intended to give his son permission to direct the enterprise; the latter was clearly acting with his father's permission. True, he was not driving at the time of the accident, but he was using the car with his father's permission and in such use, availed himself of the services of his companion." The Court then concludes: "So here the thing the father says was forbidden related to the personnel of the driver of the car, not to what use might be made of it. The three boys were using the car with the permission of the owner." The Court's conclusion of liability of the insurer was the inevitable result. In many ways, both the facts, and the reasoning of the Court in the Zurn case are similar to those in the Persellin case, supra.

In Harrison v. Carroll, 4 Cir., 139 F. 2d 427, 429, the evidence established that a person other than the original permittee was the accident-driver. In holding that there was coverage, notwithstanding such fact, the Court stated: "We agree with the District Judge that the temporary loan of the car by the son to

Going in order that he might make the short run to Danville and return for the common purposes of the group was well within the scope of the express permission granted by the owner to her son."

As appears by reference to the above cases, many of the decisions referred to by the defendants as supporting their position, are based upon evidence which either established that the use of the automobile involved at the time of the accident was with the express permission of the named insured, or that the circumstances of such use were such as to reasonably imply such permission.

The findings of the Honorable John W. Delehant, J., in Johnson v. State Farm Mutual Automobile Ins. Co., referred to in opinion of the Court of Appeals for the 8th Circuit at 194 F.2d 785, 787, as follows: "(1) that the circumstances of the situation were not such as soundly to imply that any consent in fact had been given by the named insured or existed, either generally or specifically, at the time of the accident, to an allowance by the original permittee of the use of the automobile on the part of a third party, and (2) that the third party's use was not serving any purpose in fact of either the original permittee or the named insured but only the third party's own interest or object, so that there was no basis on which it could be claimed that consent should be recognized as a matter of legal implication." would seem appropriate in the instant case. See also: Bekaert v. State Farm Mutual Automobile Insurance Company, 8 Cir., 230 F.2d 127.

The Court concludes that the use of the automobile at the time of the accident was without the permission (express or implied) of the named insured. Succinctly, the permitted use embraced and included (but was limited to) Ted's use; the actual use was that of Walter. As indicated heretofore, the Court regrets that it did not have the benefit of the testimony of either Richard (named insured) or Ted (permittee)—the only two persons who apparently have knowledge of the actual fact which is determinative.

In view of the dispositive effect of the foregoing, the remaining contentions of the plaintiff herein will not be considered or determined.

### Conclusions of Law

1. The Court has jurisdiction of the parties.

2. The Court has jurisdiction of the subject matter.

3. The use of the automobile, at the time of the accident, by Walter Mai, was not with the permission of the named insured, and hence there was no coverage under the policy involved.

4. Plaintiff is relieved of all liability under said policy (No. 2–15259–1) for all injury and damage for which Walter Mai has, or may hereafter be adjudged legally responsible, by reason of said accident.

Judgment will be entered for the plaintiff upon submission by counsel of an appropriate form of judgment.