**NATIONAL FARMERS UNION PROPERTY & CASUALTY COMPANY, a foreign corporation, Plaintiff and Respondent,**

v.

**Maynard D. RONHOLM and Dennis Ryan, Defendants,**

and

**Dennis Ryan, Defendant and Appellant.**

No. 8318.

Supreme Court of North Dakota.

Oct. 9, 1967.

Duffy & Haugland, Devils Lake, for appellant.

Letnes, Murray & Quigley, Grand Forks, for respondent.

KNUDSON, Judge.

This is an appeal from a declaratory judgment entered in favor of the respondent, National Farmers Union Property and Casualty Company, hereinafter referred to as respondent.

The facts are not essentially in dispute. Respondent is the liability insurer of Clarence N. Halvorson. The automobile insured by the respondent, a 1949 Ford sedan, was purchased by insured's son, Tyrone Halvorson, in 1961 but title was held in the name of his father. Clarence N. Halvorson is the named insured and Tyrone is listed as an additional driver (50%) on the application. The insurance policy contains a typical "omnibus clause" or extended coverage clause, providing for extension of liability coverage to others than the named insured, in the following language:

PERSONS INSURED

The following are insureds under Part I:

(a) With respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured.

The insurance policy containing this clause was in force and effect at the time of the accident involving the 1949 Ford sedan.

Dennis Ryan and Maynard Ronholm lived in the village of Tolna, North Dakota. Tyrone lived with his parents on a farm near Tolna. Ronholm and Tyrone had attended North Dakota State University at Fargo during the school term of 1961–1962, and were otherwise socially acquainted. Tyrone had the automobile at North Dakota State University for the spring quarter of 1962. On two or three occasions he permitted Ronholm to use it. On these occasions Ronholm had specifically requested Tyrone's permission to use the automobile.

On June 9, 1962, the two boys, back in Tolna for the summer, journeyed to a nearby town where Tyrone purchased some beer. They then returned to Tolna and, at 10:30 p. m., went to Ronholm's home where Tyrone left the automobile in the yard with the keys in the ignition. Ronholm's parents were not at home. They were soon joined by other young people. At approximately midnight Tyrone left the Ronholm residence with a local girl in her automobile, and with another local boy and a girl from a neighboring town whom they were to take home.

Ronholm, after Tyrone left, drove the Halvorson automobile up to the main street of Tolna and parked it. There is some dispute as to whether he parked it at the curb or in the middle of the street. At any rate, he alighted from the automobile and stood near it talking to some other young people.

Tyrone soon drove up in the girl's car and talked to the group, at the same time noticing that his automobile had been moved from the Ronholm residence to the main street of Tolna. There is a dispute as to whether Tyrone saw or spoke to Ronholm. At the trial he testified that he did not see or speak to him at this time. He had signed a statement earlier to the effect that he had seen Ronholm near the automobile and that Ronholm had come over and talked to the girls who were with him. Such fact was brought out on cross-examination but Tyrone continued to assert an inability to remember having given or signed such a statement. In any event, he said nothing about the automobile and soon proceeded out of Tolna, intending to return the other girl in the car to the neighboring town.

After his departure, Ronholm took the Halvorson automobile and drove to the Tolna ball diamond where he met and talked with Dennis Ryan. The latter got into the Halvorson vehicle and Ronholm proceeded to drive back uptown. A fog had settled in over the area some time after midnight, and while driving up the main street of Tolna Ronholm ran into a parked oil truck, causing severe injuries to Dennis Ryan.

Ryan commenced an action for damages for personal injuries against Ronholm alleging Ronholm was driving the Halvorson automobile with permission. Ronholm made a written demand upon the respondent insurance company to defend him in the action. After an investigation, the respondent determined that Ronholm did not have permission to use the automobile and was not covered under the omnibus clause of the policy issued by the respondent insurance company to Clarence N. Halvorson and, therefore, gave notice of disclaimer to Ronholm. The respondent brought this action seeking a judicial declaration that the defendant Ronholm was driving the automobile without permission and, therefore, they were not obligated under the omnibus clause to defend the action against him. The trial court held for the respondent, and Ryan appeals.

The sole issue is whether Ronholm had permission to drive the Halvorson vehicle. If he had such permission he would be included as an additional insured within the omnibus clause of the insurance policy issued by the respondent, and the latter would have the duty to defend him.

The permission required to bring an additional insured within the omnibus clause may be either express or implied. 7 Am.Jur.2d Automobile Insurance § 113 (1963), p. 425. See also, Stoll v. Hawkeye Cas. Co. of Des Moines, Iowa, 193 F.2d 255 (C.C.A. 8 1952); Sunshine Mutual Insurance Co. v. Mai, 169 F.Supp. 702 (N.D. 1959), aff'd Peterson v. Sunshine Mutual Insurance Company, 273 F.2d 53 (8th Cir. 1959); Jurd v. Pacific Indemnity Company, 57 Cal.2d 699, 21 Cal.Rptr. 793, 371 P.2d 569; Straughan v. Asher, Mo.App., 372 S. W.2d 489; 7 Blashfield, Automobile Law and Practice, § 315.10 (1966).

It must be taken as established that Tyrone had express permission to use the

automobile. The car had been purchased for Tyrone, but title was placed in the father's name. Tyrone had paid most of the purchase price of $150.00 and all of the gas, oil, and repairs when he used the automobile. Tyrone used the automobile at North Dakota State University during the spring quarter, and he used it on Saturday nights with the knowledge and consent of Clarence N. Halvorson. The record shows that Clarence N. Halvorson specifically told Tyrone that he might lend the automobile to Ronholm if such was necessary. On at least two occasions at North Dakota State University Tyrone had done so with the knowledge and approval of his father. He exercised such a degree of dominion and control over the automobile as to amount to ownership. From these facts, it is difficult to say otherwise than that Tyrone had express permission from Clarence N. Halvorson to use the automobile. Either as first permittee or as the real owner of the automobile he had the authority to grant permission to Ronholm to drive the automobile.

Having established that Tyrone had the authority to permit another to use the automobile, we must next determine whether Tyrone gave permission, either express or implied, to Ronholm to use the car. It is conceded by appellant that Ronholm did not have the express permission of either Clarence N. or Tyrone Halvorson to use the Halvorson vehicle on the night of the accident. Appellant contends, however, that the events of the night of the accident, coupled with the earlier course of conduct as to lending the automobile to Ronholm, showed an implied permission by Tyrone on this occasion. They cite as support for this contention 7 Am.Jur.2d Automobile Insurance § 113, which states:

It [implied permission] may be established by a showing of a course of conduct or relationship between the parties, including lack of objection to the use by the permittee which signifies acquiescence or consent of the insured.

See also, Sunshine Mutual Insurance Co. v. Mai, 169 F.Supp. 702 (N.D.1959) aff'd Peterson v. Sunshine Mutual Insurance Company, 273 F.2d 53 (8th Cir.1959); United Services Automobile Ass'n v. Preferred Acc. Ins. Co. of New York, 190 F.2d 404 (10th Cir.1951); State Farm Mut. Automobile Ins. Co. v. Cook, 186 Va. 658, 43 S.E.2d 863, 5 A.L.R.2d 594; Brochu v. Taylor, 223 Wis. 90, 269 N.W. 711; 7 Appleman, Insurance Law & Practice, § 4365 (1962).

■ Here, the court as the trier of the facts found that Ronholm did not have permission to use the car—that the evidence would not support an inference of implied consent to the use of the car. The appellant contends, however, that the facts are sufficient to show implied permission. On the evening of the accident Tyrone and Ronholm were engaged in a joint venture of fun and relaxation. This, without more, cannot be said to clothe Ronholm with authority to use the Halvorson automobile. In Manock v. Donley, N.D., 139 N.W.2d 391, and Kadrmas v. Mudna, N.D., 107 N.W.2d 346, the parties were jointly engaged in an evening of fun and refreshment. In neither of these cases did the court discuss the social relationship of the driver and first permittee arising out of the joint venture. The court said that the first permittee in each case was asleep at the time the automobile was taken, that neither had given permission to the driver to use the car, and neither one knew that the driver had taken the car. See also Rosenbloom v. St. Paul Fire & Marine Insurance Co., 214 F.Supp. 301 (S.D.N.Y.1963). On the other hand, in Alabama Farm Bureau Mutual Casualty Insurance Co. v. Robinson, 269 Ala. 346, 113 So.2d 140, the court did consider the social relationship as one of the factors to be considered, wherein it said:

While the social relationship between Cole and Balch might be a factor properly to be considered, with other pertinent facts and circumstances, in determining whether Balch was using the car

with Cole's implied permission, the fact that they attended the same school and were drinking companions during the day of the accident are not sufficient circumstances alone to support a finding of implied permission in this case. The critical point is that there is no evidence showing a course of conduct in the use of the car by Balch from which Cole's permission for him to use it for his personal purposes on this particular occasion could reasonably be implied.

In the instant case, if Tyrone had desired that Ronholm use the car he had the opportunity to grant him permission. The record shows that when Tyrone left the Ronholm premises in the Forde automobile there were other young people around the Ronholm premises and street, including Ryan sitting in his own car. Since Tyrone did not expressly grant permission to Ronholm it seems reasonable that he assumed that Ronholm would stay at home or would leave either with Ryan or one of the others, if he assumed anything. The time being midnight, and Tyrone having embarked on a new and more interesting venture, any joint venture that he and Ronholm had set out upon earlier in the evening was certainly at an end. In this situation, his silence could not be deemed an assent to the use of the car.

The appellant further points to the fact that Tyrone saw his car uptown a short time thereafter and contends that his failure to object established his implied consent to its use by Ronholm. The appellant's contention is untenable. Tyrone admitted having seen his automobile parked uptown but denied having seen Ronholm at the time. As to his reasons for not objecting to the automobile having been moved from the Ronholm house, he said:

Well, being I seen it uptown parked, there was no reason to be concerned because it was a small town and I didn't say anything. I couldn't do anything about it anyway so it didn't make any difference. It was all right when I seen it, it was parked and nobody was in it.

This answer was in response to a question as to whether he was concerned about its safety. On cross-examination he testified as follows:

Q. When you saw your car uptown on the street there after you had left the Ronholm house isn't it fair to say that you assumed in your own mind that Maynard had driven uptown?

A. I assumed my car was going to stay right on Main Street and it was all right because there was nobody in it.

Q. I understand that but insofar as your car getting uptown isn't it fair to say that you assumed Maynard drove it uptown?

A. What I assumed isn't,—isn't any fact though.

Q. No, but isn't it fair to say that you assumed that?

A. I didn't assume anything. I just assumed my car was going to stay right on Main Street. I didn't assume who had driven it or anything.

Regarding the alleged conversation with Halvorson, Ronholm testified as follows:

Q. Between the time you parked the car uptown and then started on the trip which ended up in the accident did you see Tyrone Halvorson?

A. Yes, I did.

Q. Where did you see him?

A. He drove through Main Street, stopped, he stopped for a second or two.

Q. Pardon?

A. I say he drove through Main Street and stopped for a second or two. He was with some other people.

Q. Did you talk to him?

A. I believe I said Hi or something.

Q. Was there any conversation about your permission to drive the car?

A. No, there wasn't.

Q. Any conversation about how the car happened to be uptown?

A. I don't believe so.

Q. Did you make any request that you would like to use it and drive it some more?

A. I don't believe so.

On cross-examination, Ronholm testified:

Q. And then as I understand it the car that Tyrone Halvorson was in, the Forde car, also came up in the center of the street?

A. Yes.

Q. And at that time Tyrone Halvorson got out?

A. No, he didn't. He didn't get out of the car.

Q. Do you recall—Oh, he was—was Tyrone driving the Forde car?

A. I don't recall if he was driving or just riding in it.

Q. In any event you spoke to him up there at the—on the street at that time?

A. Well, not—I probably said hello to the whole carload or somebody, I don't specifically remember if I said hi to him.

■ By his own testimony Ronholm admits that he may or may not have said "hi or something" to Tyrone. Assuming that he did see Halvorson and further, that he said "hi or something," it does not necessarily follow that Tyrone saw Ronholm. Throughout the trial he continued to assert that he did not see Ronholm. Even if we assume that Halvorson had good reason to believe that Ronholm had driven the automobile uptown, his lack of objection cannot be deemed consent, particularly when he testified that he did not see Ronholm, the only person to whom he could object. That this testimony was believed by the trial court is evidenced by the holding of no implied permission.

Where an appeal is taken pursuant to § 28–27–32, N.D.C.C., and the appellant demands a trial anew, the findings of the trial court must be given appreciable weight by the Supreme Court, especially when based upon testimony of witnesses who appeared in person before the trial court.

Goheen v. Gauvey, N.D., 122 N.W.2d 204. See also, Umland v. Frendberg, N.D., 63 N.W.2d 295.

■ Those cases that have found an implied permission where the use is without the express permission of the named insured have done so on the ground that there was such a relationship or course of conduct as to signify consent by the insured. See Hopson v. Shelby Mut. Cas. Co., 203 F.2d 434 (4th Cir.1953); United Services Automobile Ass'n v. Preferred Acc. Ins. Co. of New York, 190 F.2d 404 (10th Cir.1951); Tomasetti v. Maryland Casualty Co., 117 Conn. 505, 169 A. 54; State Farm Mut. Automobile Ins. Co. v. Cook, 186 Va. 658, 43 S.E.2d 863. In Brochu v. Taylor, 223 Wis. 90, 93, 269 N.W. 711, 715, it was stated thusly:

In order to support an inference that one has the implied permission to use an automobile belonging to another, for his own pleasure and purposes, there must be evidence tending to show a course of conduct or practice known to the owner and acquiesced in by him, or by some one having authority to give permission.

We are satisfied that the evidence in the instant case does not disclose a course of conduct from which permission to use the car may be implied.

On direct examination, Tyrone testified as follows:

Q. Had Maynard Ronholm ever used your car without your express permission?

A. No, he didn't.

Q. Had he ever used it under any gentleman's agreement that he could use it when you were not using it.

A. Uh,—

Q. Did you have any such agreement that he could take it any time he wanted to?

A. No, we didn't have that agreement at all unless he asked me personally.

Q. And you say that the only time that he made a request of you is a couple times in Fargo?

A. Yes.

On direct examination Ronholm testified as follows:

Q. Yeah, and there is no question about the fact that you never asked Tyrone for permission to drive the car?

A. That's right.

Q. And you never asked his permission to take Dennis Ryan any place?

A. No, I didn't.

Q. That is also true, isn't it?

A. That's right.

Q. Was there ever any understanding between you and Tyrone at any time prior to this accident that you could take the car any time you could get your hands on it?

A. You mean without permission?

Q. Yes.

A. No, there wasn't.

Q. Each time that you used it you requested permission?

A. Yes, I did.

Q. And you believe that was only on two occasions at Fargo?

A. Yes.

Certainly there was here no prior course of conduct from which an inference might arise that Ronholm might use the automobile without express permission.

The language quoted earlier from *Alabama Farm Bureau Mutual Casualty Insurance Co.* is particularly appropriate here:

> The critical point is that there is no evidence showing a course of conduct in the use of the car by [Ronholm] from which [Tyrone's] permission for him to use it for his personal purposes on this particular occasion could reasonably be implied.

 Under the facts here presented, we do not find that Tyrone impliedly consented to Ronholm's use of the Halvorson automobile. The trial court was thus fully justified in finding that Ronholm did not operate the Halvorson vehicle with Tyrone's permission so as to become an additional insured under the respondent insurer's policy.

Judgment affirmed.

STRUTZ, C. J., and ERICKSTAD and TEIGEN, JJ., concur.

PAULSON, J., not being a member of the Court at the time of submission of this case, did not participate.