113 So.2d 140

ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE CO., Inc.,

v.

Gilbert H. ROBINSON.

ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE CO., Inc.,

v.

Joseph B. HOLT.

8 Div. 853, 854.

Supreme Court of Alabama.

Feb. 19, 1959.

Rehearing Denied June 25, 1959.

Mitchell & Poellnitz and Bradshaw, Barnett & Haltom, Florence, for appellees.

McDonnell & Jones, Sheffield, for appellant.

GOODWYN, Justice.

These are two separate and distinct suits brought by two different plaintiffs (appellees) against the same defendant (appellant) on an automobile liability insurance policy. By agreement, both cases were tried together in the lower court and submitted here on one record.

The complaint in each case alleges, in substance, the following: That plaintiff recovered a judgment in the circuit court of Lauderdale County against one Chester Dallas Balch for damages suffered by plaintiff in a collision between an automobile in which plaintiff was riding and an automobile driven by Balch; that plaintiff has been unable to collect said judgment; that execution thereon has been returned by the sheriff "no property found"; that the automobile driven by Balch at the time of the accident was owned by one Armand J. Cole; that the automobile was covered by a policy of liability insurance issued by the defendant insurance company to Cole; that

said policy contained what is known as an "omnibus clause", insuring not only Cole but also any person actually using the automobile with Cole's permission; that, while said policy was in force and effect, plaintiff was injured in the aforesaid collision; that Balch was driving the automobile with Cole's permission; that no appeal has been taken from the judgment against Balch and the time for appeal therefrom has expired; that the suit is brought against the defendant insurance company to recover the amount of said judgment, together with the costs assessed against Balch in said suit. The "omnibus clause", upon which plaintiffs rely for recovery, is as follows:

"III. Definition of Insured. With respect to the insurance afforded for liability, the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

The jury returned a verdict in favor of the plaintiff in each case and judgments on said verdicts were duly rendered. The defendant's motion for a new trial being overruled in each case, it brought these appeals.

The ultimate and decisive question presented is whether the evidence supports a finding that Balch's use of the automobile at the time and place of the accident was with Cole's permission.

In view of the trial court's denial of defendant's motions for new trials, our consideration of the evidence and its tendencies should be in the light most favorable to appellees. Accordingly, we quote at length the statement of the facts as contained in appellees' brief, viz.:

"The evidence tends to show that Balch and Cole met by prearrangement at McKee's Store in Rogersville, Alabama, in the early morning of March 5, 1952, before 8:00 A.M., for the purpose of going together to the Reynolds Metals plant in Colbert County, Alabama in Cole's automobile to hunt for jobs. The two men were about the same age and attended the same class in the Veterans school in Rogersville which met five days per week from 3:30 P.M. to 9:00 P.M. with twenty minutes for supper break. They had known each other for several years, were friends, ran around together prior to the date of the accident, were together a lot, and frequently had their evening meal in company with each other and with other students in the school. Cole, a resident of Lexington, Alabama, enrolled in the Veterans School on July 25, 1951, while Balch, who lived just outside Rogersville, enrolled on February 1, 1952. Both Lexington and Rogersville, as well as Anderson which is to be later mentioned, are small rural towns in the east end of Lauderdale County, all situated fairly close together.

"After meeting at McKee's Store, Balch left, telling Cole he was going to the bank to borrow some money, and soon returned saying that he had got it. Cole did not have much money, if any, at the time. Hubert McKee, part owner of McKee's Store who also attended the same Veterans class with Balch and Cole, was present in the store and upon learning that the two men planned to go to Sheffield gave them some money and they agreed to bring him back two or three pints of 'state' whiskey. Balch and Cole then departed, the hour being some few minutes after 8:00 A.M.

"The two men traveled from Rogersville down Lee Highway towards Florence to the Wilson Dam Road, cut across the dam and on to the Reynolds plant in Colbert County. Cole drove the automobile on this part of the trip. There they sought and obtained an interview concerning their quest for employment. At some time after their arrival at the plant and while still there Balch and Cole agreed that Balch would spend the night with Cole in Cole's home in Lexington and that the two of them would return to the plant together the next morning.

"The tendencies of the evidence show that Balch and Cole left the Reynolds plant shortly before noon with Balch driving the Cole automobile. Piecing the testimony together concerning what the two men then did, (although there is sharp conflict) it can be inferred that they drove to the ABC store in Sheffield and there purchased the two or three pints of whiskey which they had agreed to get for their classmate, Hubert McKee, and also obtained some whiskey for themselves. In any event the two obtained some 'state' whiskey after their departure from the Reynolds plant and both drank heavily between that time and the time they returned to Rogersville late that afternoon, taking turns about driving. It was clear from Cole's testimony that he and his friend, Balch, had ample access to obtaining intoxicating beverages during the course of their path of travel from Reynolds to Florence although he denied that he or Balch bought or drank any whiskey or beer at all until they got back to Rogersville about suppertime.

"In some manner which Cole could only vaguely recall on the stand he and Balch killed about five hours from the time of their departure from the Reynolds plant in Colbert County until they left Florence around 5:00 P.M. on their way back to Rogersville. Cole did remember that the two of them were in Florence that afternoon but could not tell the court or jury what time they arrived in Florence, or what time they left. He was able to recall that they stopped at Griffin's car lot in Florence behind a poolroom, and just stood around and talked; he could not remember how long he stayed at the car lot, but thought that he then went to the poolroom where he just loafed around. He could not say whether Balch came up there or that they went there together. Cole could not remember eating lunch.

"The evidence is undisputed that he and Balch arrived back in Rogersville around the time for the Veteran's class supper break which the evidence showed to be 6:00 P.M. In Cole's car they went up to the Veterans School where they saw Mr. James Oaks, their teacher, and Hubert McKee, Tom Denton, Buddy Carlock, and Frank Murrah, some of their classmates. There they delivered the whiskey which they had agreed to get for Hubert McKee in Sheffield. In McKee's judgment at this time Balch and Cole were about three fourths drunk. According to their teacher, Mr. Oaks, the two men talked with him at that time and asked if they could be off, and he told them they would get an unexcused absence for that day. The evidence shows without dispute that their absence from Veterans Class on March 5, 1952, the day of the accident, was unexcused.

"The undisputed evidence further shows that from the school grounds that Balch, Cole, Hubert McKee and Frank Murrah during the short supper break went to McKee's home in Rogersville for the purpose of taking a drink. McKee testified that Frank Murrah drove the Cole automobile from the school to his (McKee's) house while he (McKee) drove Murrah's car there. Cole contended on the stand that it was he who drove the car at this time. In any event, it is undisputed that when they all got there that Balch and Cole (as well as the others) had at least one or two straight drinks of 'state' whiskey from the bottle without chasers, and that during the ten or fifteen minutes the two men were there they discussed before the others their previously formed plan for Balch to spend the night with Cole. Hubert McKee testified that aside from the whiskey which Balch and Cole brought to him that night that they (Balch and Cole) had some more whiskey with them, and that he could not recall whether the whiskey which they all drank at his house was his or theirs.

"The tendencies of the evidence show that Balch and Cole while at McKee's house that night between 6:00 P.M. and 6:20 P.M. were intoxicated; that the two men discussed among themselves and agreed that from McKee's home in Rogersville they would travel in Cole's automobile to the Tennessee State line for Balch to pay

off a check and for them to get a few beers and then go on to Cole's home where the two of them would spend the night; that even during that day Balch and Cole had talked and discussed and agreed about going up to the State line.

"The undisputed evidence shows that the two men left McKee's house in Rogersville in Cole's automobile headed toward the Tennessee State line with the agreed purpose of going there. Their planned path of travel took them through the small town of Anderson where they stopped at Belue's Store to get some gas. It was their admitted purpose to go on to the State line after refueling. Cole drove up in front of Belue's Store by one of the gas pumps. Balch was in the front seat with him. The evidence showed that Belue's Store was on the main street of Anderson, was a poolroom as well as a gas station, and was situated about ten feet off the street with a big glass window in front through which from inside the gas tanks were in plain view as well as cars parked by such pumps. The record is hazy as to which of the two men ordered the gas or as to which one paid for it, but Cole testified that Balch should have for he had ridden *from Sheffield* (emphasis supplied) and the Plant with him.

"While the evidence is without conflict that Cole alighted from the car as it was parked by the gas pump in front of Belue's Store and went inside while Mr. Belue was putting the gas in the automobile, Cole and Balch differed as to whether the key was left in the ignition switch with Cole saying he took it out and Balch claiming he left it in. It is, however, without dispute that the two of them stopped at Belue's only for the purpose of buying gas, and that there was no change in their plans to go on from there to the State line as they had previously agreed upon. It can be inferred from all the evidence in the case that Balch and Cole, having had no lunch or supper, were both still under the influence of intoxicating beverages at this time which was only a few minutes after they had left McKee's home in Rogersville.

"The tendencies of the evidence show that as Cole went into Belue's Store his friend, Balch, at first remained in the automobile. As Mr. Belue was servicing the Cole car, Cole began playing a game of pool with one Billy Ridgeway (whom he did not know) at the first table located only a few feet from the big plate glass window in front of the store. It is undisputed that there was no obstruction between where Cole was at this first table and the gas pumps to prevent him from seeing his parked automobile there in front of the store. As heretofore stated the evidence is in conflict as to whether Cole removed the keys to his car when he went into the poolroom with Cole stating that he did and Balch's statement asserting that they were left in the switch. According to Cole's version he took the keys with him when he went inside, and a few minutes later tossed or gave them to Mr. T. D. Belue when Mr. Belue came in and told him that his car needed to be moved, and that he, Cole, asked Mr. Belue to move it. Cole claimed that he paid no attention to his keys or his car after this, that he kept playing pool, that he had no objection to his car being moved, and that he did not know who moved it. He stated that Balch came in the pool room and asked him if he (Cole) was ready to leave, and that he replied that he was playing pool, that he would be ready after while. Cole further asserted that he paid no attention to Balch after this, that he did not know that Mr. Belue had given the keys to Balch for Balch to move the car from where it was parked. He denied that he ever told Balch that he could take the car and go on to the State line. Cole testified that he played two or three games of pool with Ridgeway and didn't know Balch had driven off in his car until some young boys came in the poolroom and told him that his car was gone, that 'someone' had gone off up the road in his car. He stated that he laid down his pool stick and asked if anyone would take him to find his car and that Ridgeway said he would. At this time, he said, he didn't 'think' he knew it was Balch who had his car. He claimed

that he had been told that the car had gone off 'up the road,' and that he and Ridgeway drove North out of Anderson (toward the State line) and arrived at the scene of the accident where he saw that his car had been involved. Cole asserted that he did not see Balch when he first got to the scene but when he was looking at his car he heard someone groan over at the culvert or a little ditch *and saw Balch and asked him if he was hurt.* He claimed that he did not know how Balch left the scene of the accident, but that he saw Balch at Balch's home in Rogersville later that night. He admitted that the Highway Patrol came to the scene while he was there, and that he had conversation with the officers about the accident. He denied that he told Officer Joe West there at the scene that he and Balch had been together all day and had been drinking and had been taking turn about driving his car. Officer West testified that such statement was made, by either Balch or Cole and further that Balch could not be located at the scene of the accident although a search for him at the scene was made. This despite the part that Cole had seen Balch at the scene only a few minutes before the officers arrived and had talked to him.

"Balch's version of the circumstances of his driving the Cole vehicle away from Belue's Store conflicts with Cole's version, and in fact his two written statements introduced in evidence by Appellant conflict with each other. Balch's memorandum statement appearing at *R 220* allegedly written by him a day or so after the accident asserts that 'we' (he and Cole) had planned to go to a beer joint to pick up a check he (Balch) owned and to get a 'few beers', and then he, Balch, was going to spend the night with Cole; that they stopped in Anderson to get some gas; that Cole gave 'Blue' the car key *to give me* (emphasis supplied) to drive the car from the gas pump; that he went in (Belue's) awhile and then thought while he (Cole) was playing pool that he (Balch) would go on up and pick up his check and get some beer

and come back. Balch's written statement given to Appellant's adjuster allegedly only a day or so after the accident which was introduced in evidence by Appellant is to the effect that *'we got back to Anderson, Ala.; about 6:30 P.M. We both got out of the 1936 Pontiac in front of the Pure Oil Station. We had stopped there to get some gas and left the car in front of the station. We went inside the poolroom. Cole began to play some. I watched about a game and then went out to set in the car. Cole left the keys in the ignition in the car. I just went out and cranked the car and drove off. I did not ask Cole's permission to use his car. I had intended to drive up to Leo Thornton's Beer Parlor at the State Line which is about 7 mi. north of Anderson to pick up a check that I had given Mr. Thornton sometime ago. This is something like a credit account. I had gotten about 6 mi. up the road—'.*

"The evidence is undisputed that Balch left the scene of the accident *after talking with Cole at the scene* (emphasis supplied) and without seeing the investigating highway patrolmen. The inference from the evidence is that he walked from the scene back South towards Anderson for about a half mile to a cross-roads junction known as Bethel Crossroads where he went up to Jesse Cockrell's Store and asked one Hubert Goode to take him to Rogersville. Balch told Goode that 'some guys' had run off and left him, and he appeared to be slightly injured. Goode drove Balch to his home outside Rogersville, but Balch made no statement concerning his being involved in the accident.

"From the scene Cole went back to Rogersville and then in the Company of Mr. James Oaks & Frank Murrah, went out to Balch's home. He didn't know how it happened that they went out there. The evidence is without substantial dispute that upon entering the Balch home and seeing Balch that Cole stated to him in substance 'I didn't let you have the car, did I?' And that in the course of the rest of the evening he repeated such state-

ment to Balch, ten or twelve times. It is further admitted that Cole, Oaks and Murrah took Balch to the hospital in Athens that night, and then brought him back to his home in Rogersville."

It should be noted that Balch was not a witness in the case. It appears from the evidence that he had moved to Detroit. The two statements referred to in appellees' statement of the facts as being contradictory were the statement given to appellant's adjuster, set out in the statement of facts quoted above, and a memorandum in Balch's handwriting as follows:

"Memorandum

"5th Feb. 1952 I had a car wreck.

Cole and me went to Sheffield and came back and we was to go beer joint to pick up a check I own and get a few beers and then I was going to stay all nite with him and we were to go back the next day. We stoped in Anderson, Ala. to get some gas. Cole gave Blue the car key to give me to drive the car from the gas pump. I went in awhile and then I though while he was playing pool I'd go on up and pick up my check and get some beer and come back. I was meeting a fast car with very bright lights. Couldn't see. *bang* We hit. I was knocked out a while. I got out of the car and layed down beside the road time I left the other guy had done gone to hosp. I went to get a Good boy to carry me home to where I could see if I needed a Dr. So I did Mr. Oaks, Frank Murrih and Cole carryed me to Athens hosp. wasn't any good for 3 to 4 weeks."

■ A preliminary question is whether the term "permission", as used in the omnibus clause, means a permissive use expressly given by the named insured or whether such "permission" may be implied from the surrounding facts and circumstances. It appears to be conceded by appellees that no express permission was giv-

en and appellant recognizes the general rule to be that the insured's permission, in order for the user of the automobile to be protected under the omnibus clause, may be either express or implied. We see no good reason to depart from the general rule. 5A Am.Jur., Automobile Insurance, § 94, p. 92; 45 C.J.S. Insurance § 829c (2) (b) aa, pp. 897–898; 7 Appleman, Insurance Law and Practice, § 4365, p. 166; Annotation, 5 A.L.R.2d § 6, p. 608; 6 Blashfield, Cyclopedia of Automobile Law and Practice, Per. Ed., § 3943, pp. 614–615.

As already noted, it appears to be conceded that no express permission was given to Balch to use the automobile for any purpose. Our problem, then, is to determine whether the evidence is sufficient to support a finding that he had Cole's implied permission to use the car on the particular occasion when the accident occurred. We have given full consideration in consultation to all the evidence and do not think that it is sufficient in that respect. To the contrary, the actions of Cole at the filling station, considered in connection with all the other evidence, seem clearly to negative any inference that his car was taken and used by Balch with his permission. There is no evidence that Balch had ever driven the car prior to the occasion here involved except on the same day when Cole was in the car with him. Balch had never driven it alone. Clearly, it seems to us, it cannot be said that Cole's actions furnished any basis for implying that Balch had his permission to drive off in the car and use it as he did. Nor do we think that there is evidence otherwise showing a course of conduct supportive of a finding that Balch had Cole's implied permission to use the car.

While the social relationship between Cole and Balch might be a factor properly to be considered, with other pertinent facts and circumstances, in determining whether Balch was using the car with Cole's implied permission, the fact that they attended the same school and were drinking companions during the day of the accident are

not sufficient circumstances alone to support a finding of implied permission in this case. The critical point is that there is no evidence showing a course of conduct in the use of the car by Balch from which Cole's permission for him to use it for his personal purposes on this particular occasion could reasonably be implied.

■ Usually, an implied permission arises from a course of conduct of the parties over a period of time prior to the use in question. But this is not to say that there may not be an implied consent in the first instance if the particular circumstances justify the inference. The point is that, in the case before us, there was no prior course of conduct in the use of the car by Balch for his individual purposes from which permission on this particular occasion could reasonably be implied; and we find nothing in the circumstances on the day of the accident which could give rise to an implied permission. What was said in Brochu v. Taylor, 223 Wis. 90, 269 N.W. 711, 715, is appropriate here, viz.:

"* * * In order to support an inference that one has the implied permission to use an automobile belonging to another, for his own pleasure and purposes, there must be evidence tending to show a course of conduct or practice known to the owner and acquiesced in by him, or by some one having authority to give permission. Tomasetti v. Maryland Casualty Co., 117 Conn. 505, 169 A. 54.

"The applicable rule was well stated in Kazdan v. Stein, 26 Ohio App. 455, 160 N.E. 506, 507, affirmed in 118 Ohio St. 217, 160 N.E. 704:

" 'Whether a consent is express or implied depends upon the conduct of the party whose consent must be had. Whatever may be the act, circumstance, or fact, in order to recover under the terms of the agreement, there must be a connection made with the conduct of the party whose consent, either express or implied, is necessary. Thus there may be acts, circumstances, and facts, such as the continued use of the car, but unless they attach themselves in some way to the acts of the party whose consent must be had there can be no implication of consent arising, because consent signifies some fact or circumstance proceeding from the party who must consent in order to make the act valid. In other words, there must be a nexus between the acts and the voluntary action on the part of him who must consent. The implication, in order to have legal significance, must have the element of mutuality, because in implied consent it is just as necessary to show mutuality as it is in express consent, and as to the latter there is no question that a mutuality of agreement must exist.'

"There must be a knowledge of such use without objection or reprimand. Maryland Casualty Co. v. Ronan, 2 Cir., 37 F.2d 449, 72 A.L.R. 1360."

■ While we are inclined to the view that the cases were properly submitted to the jury under the "scintilla" rule, we are, nevertheless, compelled to the conclusion, after careful consideration of the evidence, and giving effect to the reasonable inferences therefrom favorable to the appellees, that the verdicts were against the clear preponderance and great weight of the evidence. Hence, appellant's motions for new trials should have been granted. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738; Franklin Fire Ins. Co. v. Slaton, 240 Ala. 560, 562, 200 So. 564.

The judgments are due to be reversed and the causes remanded. So ordered.

Reversed and remanded.

LAWSON, SIMPSON, STAKELY, MERRILL and COLEMAN, JJ., concur.