The **HANOVER INSURANCE COMPANY,**
a Corporation, (Plaintiff) Appellant,

v.

George F. ABCHAL, Jr., and Sylvia Broeckelmann, (Defendants) Respondents.

No. 31506.

St. Louis Court of Appeals.

Missouri.

Feb. 18, 1964.

Evans & Dixon, John C. Shepherd and Paul V. Gilbert, St. Louis, for appellant.

James F. Koester, St. Louis, for respondent Sylvia Broeckelmann.

FRANK W. HAYES, Special Judge.

This is an action for a declaratory judgment filed by the Hanover Insurance Company, a Corporation, against the respondents Sylvia Broeckelmann and George F. Abchal, Jr. The controversy arises out of the question of whether its automobile policy of liability insurance, No. ACF 41031, issued to one John E. Warden, covering a 1956 Mercedes Benz automobile, No. 300SL, M#5500784, afforded coverage to the respondent, George F. Abchal, Jr., while driving said automobile on a social date with respondent Sylvia Broeckelmann who sustained personal injuries resulting from an accident while they were so engaged.

On February 15, 1959, respondent Sylvia Broeckelmann filed a lawsuit, No. 229,720,

in the Circuit Court of the County of St. Louis, Missouri, against respondent George F. Abchal, Jr., for damages. On October 2, 1959, appellant Hanover Insurance Company filed its petition for declaratory judgment against respondents George F. Abchal, Jr., and Sylvia Broeckelmann in the same court, being cause No. 231,638. Later, respondent Broeckelmann filed her petition in the same court against appellant Hanover Insurance Company, et al., for a declaratory judgment, being cause No. 239,935. These two suits were consolidated on November 3, 1961, on the motion of respondent Broeckelmann. On January 23, 1963, respondent Broeckelmann obtained judgment in Cause No. 229,720 against respondent George F. Abchal, Jr., in the sum of $4500, which amount she seeks to collect from the appellant, Hanover Insurance Company, a Corporation, on the theory that respondent Abchal was an additional insured under the policy issued by said company to John E. Warden. The lower court entered its judgment in favor of respondent Broeckelmann declaring that respondent George F. Abchal, Jr., was an additional insured under said policy and entitled to its protection. The appellant brings this appeal.

The pertinent provisions of said policy involved here are as follows:

Part I Liability, Persons Insured.

"The following are insured under Part I: (a) With respect to the owned automobile * * * (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured."

It was admitted by stipulation that respondent Abchal, Jr., was not a resident of St. Louis County, Missouri, at the time of the trial and that he and respondent Broeckelmann were out on a social call and not on any business for Spooner Motor Company at the time of the accident aforesaid. Respondent Abchal was not present and did not testify at the trial. His deposition had been previously taken but was not admitted in evidence because it was not signed by him. There were only two witnesses who testified. They were John E. Warden, the owner of the automobile which was insured by appellant, and the only witness testifying who knew the terms upon which said automobile was delivered to respondent Abchal, Jr., and Robert G. Spooner, President of Spooner Motor Company, who knew nothing of the understanding between Warden and respondent Abchal, Jr., and whose testimony related chiefly to events occurring *after* the delivery of said automobile by Warden to respondent Abchal and as to how he ran his business. The question therefore is, did the respondents sustain their burden of proof and prove that respondent Abchal, Jr., on the date of the accident, was using said automobile with the express or implied permission of the insured, John E. Warden?

Witness Warden testified that he was fifty-eight years old and lived at 8000 South Drive, Richmond Heights, Missouri. He was self-employed in the transportation business. Between December, 1958, and February, 1959, he was the owner of a 1956 Benz automobile which he turned over to Spooner Motors for sale. The respondent Abchal had informed him that he was sales manager for Spooner Motors. Warden was going to Panama on his vacation on January 1, 1959. He had delivered the car to Continental Motors to install a new gear box and had instructed them, after the repairs were made, to deliver the automobile to Spooner Motors for sale. He had previously talked with respondent Abchal, who said he was sales manager for Spooner Motors, and it was agreed that said automobile would be turned over to Spooner Motors for sale at the price of $6500. He had previously placed a Corvette with Spooner for sale, but it was stolen before sale. He stated that he had talked to Mr. Spooner as to whether his insurance would cover the Mercedes Benz but Spooner denied the conversation. As Warden directed, the Mercedes Benz was delivered to respondent Abchal, Jr. Warden stated

that he never gave respondent Abchal permission to use the Mercedes Benz for his own personal use. After the accident, the Mercedes Benz was again placed with Spooner for sale but soon picked up because Spooner was having financial difficulties.

On cross-examination, witness Warden testified that he, his son and respondent Abchal were on friendly terms. Respondent Abchal and his son went out together socially and respondent Abchal was a frequent visitor in his home. Warden's dealing with Spooner Motors about the sale of the car was with respondent Abchal, the general sales manager, except as to conversation he had with Mr. Spooner about the insurance. Nothing was said to Spooner about him picking up the car. Warden told Continental Motors, when the car was ready, to call respondent Abchal, Jr., the general manager of Spooner Motors. Continental Motors had the car keys and he arranged with respondent Abchal to pick up the car and did not restrict his use of it. He was not aware that salesmen used cars left for sale on their own personal business. He had since become aware of such facts and if such was normal procedure, it was agreeable with him. Respondent Abchal, Jr., had never used the Mercedes Benz or any other automobile belonging to him with his express or implied consent. He didn't know whether his son ever let him drive the car or not. The son is now deceased. Continental Motors was instructed to remove the license plates from the Mercedes Benz. Whether it was done or not, he did not know. Warden made a claim for collision loss against the appellant under the policy in question and he paid the $50.00 deductible which was not refunded. If it was the policy of Spooner Motors to let their salesmen use cars for their own personal business, he had no objection to their policy, but he would not have OK'd it. He did not tell respondent Abchal he could not use said automobile personally.

On redirect, Warden testified that he did not know what the normal operating procedures of Spooner Motors were and that the only thing he was interested in was in selling his car.

Witness Robert G. Spooner testified that he operated the Spooner Motor Company and that during 1959 the respondent Abchal was in his employ as a salesman. He was friend of John Warden and his son and respondent Abchal, Jr., and had been out socially with them. He had no conversation with Warden about insurance on the Mercedes Benz but did have about Warden's Corvette. Spooner knew nothing about respondent Abchal taking possession of Warden's Mercedes Benz. Respondent Abchal, Jr., picked up said automobile from the Continental Motor Company and he saw him operating the car. Respondent Abchal, Jr., tried to finance said automobile. Spooner had nothing to do with taking possession of said automobile and it was not for sale by Spooner Motor Company. All consignments had to be approved by Spooner. After the accident, the Mercedes Benz was taken by him on consignment and displayed and nobody could use it for their own personal use. Warden did not give him the title before he left nor did he ever make any claim against Spooner Motors for damages.

On cross-examination, Spooner testified that no one drove the car except him after the accident and that it was not normal operating procedure to allow salesmen to use consigned cars for their personal use and that he would not allow it.

■ There is no question that the permission provided for in the omnibus clause can be either express or implied from the conduct of those in position to give it. But as a general rule the person claiming such permission must prove it, and no implied permission can arise merely because someone obtained possession of the property and used it without the knowledge of the named insured. Varble v. Stanley, Mo.App., 306 S.W.2d 662; McKee

v. Travelers Insurance Company, Mo.App., 315 S.W.2d 852. Whether permission be expressly granted or impliedly conferred, it must originate in the *language or conduct of the named insured* or someone having authority to bind him in that respect. Hooper v. Maryland Casualty Company, 233 N.C. 154, 63 S.E.2d 128. Usually, an implied permission arises from a course of conduct of the parties over a period of time *prior* to the use in question. Alabama Farm Bureau Mutual Casualty Insurance Company v. Robinson, 269 Ala. 346, 113 So.2d 140.

■ In cases tried by the court without the aid of a jury courts of appeals must review the facts upon appeal as in suits of an equitable nature; it is the court's responsibility to make its own determination of the facts and where its examination of the evidence impels conclusion that the lower court's findings are clearly wrong, court will not hesitate to make findings contrary to them. However, the judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. Section 510.310(4) RSMo 1959, V.A.M.S.; Fischman v. Kiphart, Mo.App., 297 S.W.2d 784, 786(1); Logan-Moore Lumber Company v. Maddi, Mo.App., 325 S.W.2d 72, 73(1, 2).

We find from the evidence that Warden, the insured owner of the Mercedes Benz, delivered said automobile to respondent Abchal as general sales manager of Spooner Motor Company for the purpose of sale. This agreement was entered into between Warden and respondent Abchal, as such sales manager. Abchal did not testify at the trial nor was his deposition admitted in evidence, so the testimony of Warden, who was the only person who could give express permission to use said automobile, stands uncontradicted and unimpeached. We find that respondent Abchal had express permission to have possession of said automobile for sole purposes of sale. We find that respondent Abchal, Jr., has never previously used any automobile or the Mercedes Benz of Warden with his permission. There is nothing in the dealings or association between Warden and respondent Abchal, Jr., that would justify implying that respondent Abchal, Jr., had permission to use the Mercedes Benz for his own personal use or social purposes for a period of several weeks while Warden was on vacation, because Warden testified he had never authorized respondent Abchal to use any of his automobiles prior to time he delivered the Mercedes Benz to him for sale and there was no contact between Warden and respondent Abchal, Jr., between that time and until after the accident as Warden was in the Bahamas on vacation.

The fact that respondent Abchal, Jr., attempted to finance the purchase of said automobile through Spooner would corroborate Warden's statement that the car was delivered for sale. And whether or not respondent Abchal, Jr., advised Spooner that Warden had delivered the said automobile to him, as general sales manager of Spooner Motors, for sale would not discredit Warden's testimony that such was the fact. Warden understood that respondent Abchal, Jr., was sales manager of Spooner Motors and he delivered his automobile on that basis for sale. Spooner was not present at the time of the arrangements and knew nothing of the terms of the delivery of the car. Spooner's testimony of later developments cannot support respondent's contention.

■ Respondents attempted to show that, in the course of operation of Spooner Motor Company, if salesmen were permitted to use cars left for sale for their personal use, that Warden would not have objected to such use. Such evidence has no relevancy or probative value. Warden testified he knew of no such policy at the time he delivered his automobile to respondent Abchal for sale. Spooner testified that his company had no such policy. If such policy existed and Warden found out about

it between the date of delivery of the car to respondent Abchal, Jr., and the date of trial of this case, such fact cannot affect the rights of the parties herein. Warden is not a party to this litigation. The rights and liabilities of appellant, Hanover Insurance Company, under its policy were definitely fixed by the facts existing at the time of the accident. What Warden discovered about Spooner Motor Company's policy after that date or what he would have done if he had known certain facts cannot be the basis of a waiver or estoppel so far as appellant is concerned. As is said in Bekaert v. State Farm Mutual Automobile Insurance Company, 8 Cir., 230 F.2d 127, l. c. 130:

"[4] Nor, of course, if the trial court could properly find that permission, express or implied, in relation to the use being made of the car at the time of the accident, had not been sufficiently established as an existing fact, would the named insured's statement or testimony after the accident, that he would have been willing at the time to have given his consent, if it had been requested, be capable of filling the contractural void against the insurer, from the lack of existence of such permission at the time of the accident. Johnson v. State Farm Mutual Automobile Ins. Co., 8 Cir., 194 F.2d 785, 787."

And after the accident, whether Warden filed a claim against the appellant, his insurance carrier, and did not file a claim against Spooner Motor Company, cannot affect the appellant's rights. If there was no coverage at the time of the accident because respondent Abchal did not have express or implied permission to use Warden's car, then Warden could not create coverage by his actions after the accident. As is said by this Court in McKee v. Travelers Insurance Company, Mo.App., 315 S.W.2d 852, l. c. 858:

"[5] But even if the respondent had undertaken Strickland's defense with

knowledge that he was operating the truck without permission at the time of the accident, appellants would not thereby become entitled to relief against respondent. Appellants' only citation in support of their contention is that of Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo.App. 327, 133 S.W. 664, which involved the insured named in a policy. Strickland was neither the named insured in this policy nor was he, as we have found, an additional insured within the terms of the omnibus clause since he was not using the truck with the permission of the named insured at the time the accident occurred. Hence Strickland's liability was never covered by the policy, and neither waiver nor estoppel would operate to create, in effect, a non-existent policy. Mistele v. Ogle, Mo.Sup., 293 S.W.2d 330; Linenschmidt v. Continental Casualty Co., 356 Mo. 914, 204 S.W.2d 295. * * *"

See also C. H. Elle Construction Company, a Corporation et al., v. Western Casualty and Surety Co., a Corporation, 294 F.2d 459 (9th C.C.A.), where it is held that where employer's driver had borrowed the truck upon the permission of the truck owner's wife who had no position in truck owner's business activities and who, without authority and without prior pattern of lending her husband's equipment, gave the driver the keys to the vehicle, the truck was used without the owner's permission, and that subsequent ratification of driver's operation by the owner, by billing the driver's employer for truck rental, did not render the owner's insurer liable for injuries arising out of the operation of the truck while it was being used without permission.

■ An examination of the facts and record in the instant case impels us to reach the conclusion that the respondents have failed to prove that respondent Abchal, Jr., at the time of the accident in question,

was operating the Warden automobile with the express or implied permission of the named insured, John E. Warden, and that the lower court's findings are clearly wrong and that judgment is erroneous. The judgment should be reversed and the cause remanded with directions to the lower court to enter a declaratory judgment in favor of appellant as prayed for in its petition.

It is so ordered.

RUDDY, P. J., and WOLFE, J., concur.