**HARTFORD ACCIDENT AND INDEMNI-
TY COMPANY, a Corporation,
Plaintiff-Respondent,**

v.

**Harry J. LIST, Irene D. Moore, James C.
Minks, Florence E. Smith, Doyle
Rushton, Defendants,**

**Harry J. List, Defendant-Appellant.**

**No. 24762.**

Kansas City Court of Appeals.
Missouri.

Feb. 5, 1968.

Michael F. Mahoney, Frank L. Cohn, Kansas City, for defendant-appellant.

William H. Sanders, Dean F. Arnold, Thomas I. Osborne, Kansas City, for plaintiff-respondent; Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel.

CROSS, Judge.

This is an action for a declaratory judgment brought by plaintiff insurance company against five defendants, named as fol-

lows: Doyle Rushton, owner of an Oldsmobile automobile and the named insured in a policy of automobile liability insurance issued by plaintiff; Irene D. Moore, who, while driving Rushton's car, had a collision with another automobile, on June 10, 1965; Florence Smith, a passenger riding in the Rushton car at the time of the collision and a claimant for damages for injuries; James C. Minks, owner and driver of the other automobile involved in the collision who also claimed damages; and Harry J. List, a passenger in the Minks' automobile who had filed a suit for personal injury damages.

Plaintiff in its petition alleges that a policy of liability insurance was issued by it to defendant Rushton; that Rushton's automobile was involved in a collision with the Minks' automobile while being operated by defendant Irene D. Moore; that defendant Harry J. List has filed suit against defendant Moore for damages for personal injuries allegedly resulting from the collision; that defendants Minks and Florence E. Smith also are asserting claims against defendant Moore as the operator of an automobile owned by defendant Rushton and insured by plaintiff; that the liability policy issued by plaintiff extends coverage to the named insured (Rushton) and to any other person using such automobile with the permission of the named insured, provided the actual operation thereof is within the scope of such permission. Plaintiff further alleges that a controversy has arisen as to whether at the time of the collision, defendant Moore was operating Rushton's automobile with his "permission" as it is defined in the policy (so as to extend the liability coverage afforded by the "omnibus clause" to defendant Moore as an additional insured) and whether Rushton as the named insured gave plaintiff the "cooperation" required by the policy. It is plaintiff's prayer that the court declare its rights and obligations in the premises.

The issues of fact thus raised were tried with the aid of a jury, as permitted by Section 527.090 V.A.M.S. At the conclusion of the evidence the trial court instructed the jury that "the issue of the cooperation of Doyle Rushton with the Hartford is withdrawn from the case." The remaining issue, i. e., whether defendant Moore was operating defendant Rushton's automobile with his permission, was submitted to the jury by Instruction No. 2 which told the jury their verdict must be for plaintiff Hartford Accident & Indemnity Company if they believed that defendant Irene Moore Mooney did not have express permission from defendant Doyle Rushton to use his automobile at the time of the accident on June 10, 1965. The jury returned its verdict as follows: "We, the undersigned jurors, find the issues for the plaintiff." Upon this verdict the trial court entered the following judgment:

"WHEREFORE, it is ordered and adjudged by the Court that the issues before this Declaratory Judgment only be found in favor of the plaintiff, Hartford Accident and Indemnity Company and against the defendants and be it further declared as a fact that the Defendant Irene Moore Mooney did not have express permission from Defendant Doyle Rushton to use his automobile at the time of the accident on June 10, 1965; all of this to be a final order as to the aforesaid at defendants' costs, and execution will issue therefor."

Appeal from the judgment is prosecuted solely by defendant List, sometimes hereinafter referred to as appellant. The questions presented are whether plaintiff's counsel made improper and prejudicial remarks in his opening statement and closing argument to the jury, and whether plaintiff's verdict directing instruction was erroneous.

The above mentioned collision was the culminating event of a brief acquaintance between defendants Rushton and Moore, both of whom were called by plaintiff as witnesses. From their testimony we learn the nature of their association and the

facts which gave rise to this suit. Rushton identified himself as a single man who was employed as a professional over-the-road truck driver. He met Mrs. Moore about ten days prior to the collision at a bar in Kansas City. She was introduced to him by a mutual friend as a woman desiring employment at housekeeping work. After this meeting Mrs. Moore went to Rushton's home several times (the exact number not being clearly shown) and did some housecleaning. She denied that their relationship was "anything more than that". On one occasion she was an invited dinner guest at Rushton's home. On another occasion Rushton took Mrs. Moore to the home of one of her relatives. As best we can determine from the record, Rushton and Mrs. Moore were in each other's company six different times.

There is evidence that prior to the collision Mrs. Moore had used the vehicle on two occasions—both times with Rushton's *express* consent, and for the purpose of purchasing "stuff for the housecleaning" at the shopping center. Rushton testified that on each of these occasions he handed the car key over to her. The first time she used the car was at noon on an unspecified date. Her second use of the car was one night after she had ridden with Rushton to his place of employment. Rushton testified that on that occasion he told her to take the car for the specific purpose of getting some household articles and that she could use it that night. She kept the car in her possession overnight and next morning returned to Rushton's place of employment and picked him up.

There is direct conflict between the testimony of defendant Rushton and defendant Moore as to the course of the evening prior to the collision, and the circumstances attending Mrs. Moore's use of Rushton's automobile that night. According to Rushton, Mrs. Moore came to his home early in the evening in her own car and did some housecleaning work. She cleaned the kitchen and dining room, for which work he paid her $5.00. When she prepared to leave

the house, Rushton was in his back bedroom doing some book work. She "hollered" to him from the front part of the house and told him she had finished and was leaving. Rushton told her to take her pay out of his pocketbook on the table. Nothing was said about her taking his car and he first learned that she had taken it at about four o'clock on the following morning when he was notified of the collision by defendant Florence Smith. Rushton further testified: "Q. And on this particular evening, how did she happen to have your car, do you know? A. The only way that she could have taken it, she taken it without my permission." "Q. Do you know when she left the house that she has been cleaning? A. No, I don't, because I was busy doing some bookkeeping in my bedroom." "Q. How did she get over to your house? A. She came in her car. Q. And at that time were you under the impression that she was leaving in her car? A. At that time I was, definitely. Q. Did you go outside to see if she did leave? A. I did not. Q. Did you know or recognize that she was taking your car when she left? A. I did not." "Q. Do you know where the lady got the key to your car? Do you know where the key was left? A. The key was left on my dining room table. Q. Was that your customary place of putting it? A. All of the time. Q. Had you ever given this lady permission to come in and pick the key up and take the car? A. No, sir. Q. On those other two occasions that you let her use the car how did you go about handing the key over to her? A. I handed it to her. Q. So it was never a matter of just taking the key and taking the car? A. That is true." He had never given her "blanket permission" to use the car and there had never been any "implication" on his part to her that she could use the car whenever she liked. Rushton specifically denied that he had given Mrs. Moore his credit card; also that he had told her that he would take her car to a service station and have it repaired and that she could meanwhile use his car.

Mrs. Moore's version of the events that transpired on the evening in question is as follows: She drove her own car to Rushton's house, arriving there about 9 or 10 o'clock P.M. She "went out there to trade cars. That was why I went out there." Her car being in need of repair, Rushton had told her that he would have it fixed at the garage in the morning and when that was done she could come back and pick it up. That was "the purpose of me being out there". She did no housecleaning on that occasion but just traded cars. She stayed at Rushton's house for an hour or two engaged in conversation, and left there about eleven o'clock. She then got into Rushton's car and drove it away. She got the key to it from Rushton. "He handed the key to me. —He give me the key and he said that he would have my car taken to the garage in the morning and when it was fixed I could come and pick up my car and drive my own." Rushton paid her no money that night and he had previously paid her for all the work she had done before. It was her testimony that Rushton "told me if I needed any money to get it", but that "I didn't take no money." After driving away with Rushton's car, Mrs. Moore later picked up Florence Smith, her aunt, and proceeded to drive her over to see her estranged husband. While so operating Rushton's automobile, she collided with the Minks automobile at approximately the hour of 1:40 A.M.

In appellant's first point the trial court is charged with error in refusing to declare a mistrial and discharge the jury because of improper and prejudicial statements made by Hartford's counsel in his opening statement to the jury. The remarks complained of were as follows: "Now, the automobile, according to the police report at the Hartford Company, was being operated at the time by a woman known as Irene D. Moore —M–o–o–r–e. Mrs. Moore goes by the name of Cindy. At the time of this matter she was a married woman, but her husband was in the penitentiary in connection with a burglary conviction." Counsel for appellant objected to the quoted remarks on the ground they were extraneous to the issues, were made for the purpose of discrediting defendant Moore and her testimony, and were calculated to prejudice the jury against defendants. The trial court sustained the objection and instructed the jury to disregard the remarks of counsel but overruled appellant's motion to discharge the jury. Additionally the court cautioned plaintiff against pursuing the subject matter of the remarks when introducing evidence.

Considered in the light of the entire record, the remarks in question were in reference to matters which had no bearing on the issues being tried and were improper and prejudicial in that they tended to cast an unfavorable reflection upon the defendant Moore and the credibility of her testimony. It is well settled that the trial court is vested with a wide discretion to deal with improprieties of such nature occurring in the course of trial, and that an appellate court will not disturb the trial court's exercise of that discretion in the absence of a showing that it has been abused. This rule was concisely stated by the Supreme Court in Hancock v. Kansas City Terminal Ry. Co., 347 Mo. 166, 146 S.W.2d 627, 1. c. 630 (cited in 5A C.J.S. Appeal & Error § 1611, p. 113), in language here quoted: "Of course, when false statements are deliberately made to deceive, or there is improper matter injected for the purpose of arousing passion or prejudice, which it seems reasonable to believe did mislead or improperly influence the jury, a verdict so induced will not be permitted to stand. However, because trial courts have such an obvious advantage for the determination of this question, appellate courts usually leave this matter to their discretion and defer to their judgment."

The case of American Displays v. E. T. Swiney Motors, Inc., Mo.App., 240 S.W.2d 732, is direct authority on the instant question. During cross-examination of defendant Swiney, opposing counsel inquired

whether his former business associate had served a term in the penitentiary. The trial court sustained objection to the question and admonished the jury to disregard it, but refused to declare a mistrial and discharge the jury—exactly as was done in the instant case. The reviewing court held that although the obvious purpose of plaintiff's counsel in bringing out the fact that defendant's former associate had served a penitentiary term was to prejudice the jury against defendant, the trial court's rulings and corrective action taken were within its discretion and hence should not be disturbed. Pertinent language of the opinion is as follows: "However the saving circumstance is the fact that the court unequivocally sustained the objection to the question and thereby put the stamp of its solemn disapproval upon such line of inquiry. It indulged in no hesitation when it was called upon to rule, but immediately declared the impropriety of such interrogation. In other words, the court exercised its discretion, and exercised it in defendant's favor. To what length it should go was a matter it alone could best determine from what it was in a position to observe of any harm that had been done. It concluded that the episode could be corrected by a firm admonition to the jury to disregard the question, and that the occasion did not call for the granting of a mistrial. Unless we could clearly say that the court abused its discretion in refusing a mistrial, there would be no warrant for our interference; and the record discloses no such situation."

We adopt the reasoning set forth in the foregoing quoted authority and rule that the trial court's refusal to discharge the jury under the circumstances shown was not an abuse of judicial discretion and did not constitute reversible error. In arriving at this decision, we have examined and considered the cases cited and relied upon by appellant but we have not found them to be persuasive authority to support his position on the question presented.

In appellant's second point it is contended that the trial court erred in failing to declare a mistrial and discharge the jury when plaintiff's counsel in his closing argument to the jury made allegedly improper remarks appealing to the jurors' self interest. The remarks complained of were as follows:

" 'Why wouldn't the Hartford want to defend this case?' We base the premium in this case, which is $33.00, as I recall, on our experience. We can take and go out and defend all of these cases where it looks like there is no insurance in this case and somebody is going to try to find an insurance company to tie onto, but we are going to have to raise our rates, and if we raise our rates the people pay. High costs of insurance would result if the Hartford Insurance Company were required to defend multiple lawsuits."

Counsel for appellant objected to the quoted remarks and the trial court effectively overruled the objection by directing plaintiff's counsel to "Proceed".

Appellant now argues to this court that the remarks objected to "constituted a direct appeal to the self interest of the members of the jury, because, essentially, what the jury was being told was that if they found against the plaintiff, that their own individual insurance premium likely would be raised", and that the action of the trial court "stamped the alleged conduct of plaintiff's counsel as proper."

Plaintiff's response to this contention is that appellant's counsel in prior argument to the jury *first* brought up the subject of higher premiums by referring to the constantly rising cost of insurance premiums, and by asking, *in the first instance*, the question, "Why wouldn't the Hartford Insurance Company * * * want to defend" the damage suit appellant had brought against defendant Moore * * * instead of prosecuting a declaratory judgment action? Therefore, says plaintiff, its counsel was legitimately entitled to make the argument

**766**

of which appellant complains because it was invited by and made in answer to appellant's previous argument, pertinent portions of which are here quoted:

> "Why would Mr. Rushton say this? If he was very embarrassed you can see why. But you know as you go to apply for liability insurance the cost of insurance goes constantly up and they charge points against you when your car is in an accident and it, the policy, says 'Any driver,' and when he goes to apply for insurance again his insurance will be higher. That is something for you to consider as to motive."

> \* \* \* \* \* \*

> "Why wouldn't the Hartford Insurance Company just want to defend his claim? Gentlemen of the jury, if you decide that the Hartford Insurance Company owes coverage, you are not saying that they have to pay any money. You are just saying that they have to defend the lawsuit brought by my client. We are not here asking the Hartford Insurance Company in this case to pay any money. There will be another lawsuit, the one that I filed for my client, who was thrown out of his car, and the jury in that case will decide whose fault the accident was and if the jury in that case decides that this Moore woman was at fault that is another case. If they decide that she was not at fault the Hartford doesn't have to pay anything. But this, Gentlemen of the Jury, is a contract. This insurance policy is a contract, and he paid his money for the contract, and it says in there that they are supposed to defend cases brought against their insured, and under the definition of insurance it is any person using such automobile under the name of the insured so this Moore woman comes under the name of the owner of that contract because he was insured under that contract."

■ The foregoing quoted statements made by appellant's counsel were reason-ably susceptible of being understood by the jury as argument to the effect (1) that the Hartford raised its premium rates from time to time according to the incidence of casualties suffered by its insureds; (2) that consequently it was Hartford's duty to have defended the multiple lawsuits arising from the collision instead of testing its legal obligation to do so by the instant declaratory judgment action, and (3) that Hartford would not have to pay out any money even if the jury found the issues in favor of defendants. Such argument was improper because it was not directed to any legitimate issue in the case, because it first raised the extraneous issue of rising premium rates, and because it prejudicially suggested to the jury that Hartford was remiss in its duty under the policy in seeking a declaration of its contract rights and obligations instead of defending the damage suits that arose from Mrs. Moore's use of its insured's automobile.

Missouri courts have consistently observed the general rule that improper argument to the jury can not be made the basis for error when it has been provoked by the remarks of counsel for the adverse party. The principle underlying this rule is that the party whose counsel pursues improper argument and invites a reply is estopped to complain of the reply argument. The permissible scope of such answering argument is largely within the discretion of the trial court. 27 Mo.Digest, Trial, ■

It may be conceded that argument by plaintiff's counsel on the subject of increasing insurance premium rates would have been improper and objectionable in the absence of any remark to provoke it. But that is not the setting in which plaintiff's counsel made his argument. Appellant's counsel had previously injected the subject of increasingly higher costs of insurance into the case and, in connection with it, had directly challenged plaintiff for an explanation of why it had chosen to prosecute a declaratory judgment suit instead of defending all the damage suits involved. It then became plaintiff's right to make a fair

retort to those improprieties, and to explain to the jury that insurance rates are based on experience, that the defense of lawsuits entails money cost, and that if plaintiff were required to defend all lawsuits regardless of its contract obligation to do so, rates would have to rise accordingly. Plaintiff's retaliatory argument to that effect was well within the liberal latitude our courts have allowed counsel in replying to provocative remarks of an adversary. Contestible v. Brookshire, Mo., 355 S.W.2d 36. Cases cited by appellant are readily distinguishable on the facts presented and are not persuasive.

In overruling the objection, the trial court acted within its allowable discretion and committed no error.

Appellant's remaining point is that the trial court erred in giving plaintiff's Instruction No. 2 which reads as follows: "Your verdict must be for plaintiff Hartford Accident & Indemnity Company if you believe that defendant Irene Moore Mooney did not have express permission from defendant Doyle Rushton to use his automobile at the time of the accident on June 10, 1965." (Not from MAI). Appellant insists the instruction is erroneous in that it misstated the law respecting "the permissive use of an automobile" and disregarded evidence from which the jury could have determined that Mrs. Mooney was operating Rushton's automobile with his *implied* permission when the collision occurred and consequently was a person "insured" under the terms of Rushton's policy.

The pertinent policy clause reads in part as follows: "Under Coverage A—Liability * * * the following are insureds: (a) with respect to an owned automobile, (1) the named insured, (2) any other person using such automobile with the permission of the named insured * * *".

Missouri decisions uniformly hold that such "permission" may be either express or implied. In Hanover Insurance Company v. Abchal, Mo.App., 375 S.W.2d 605, the court said:

"There is no question that the permission provided for in the omnibus clause can be either express or implied from the conduct of those in position to give it. But as a general rule the person claiming such permission must prove it, and no implied permission can arise merely because someone obtained possession of the property and used it without the knowledge of the named insured. Varble v. Stanley, Mo.App., 306 S.W.2d 662; McKee v. Travelers Insurance Company, Mo.App., 315 S.W.2d 852. Whether permission be expressly granted or impliedly conferred, it must originate in the *language or conduct of the named insured* or someone having authority to bind him in that respect. Hooper v. Maryland Casualty Company, 233 N.C. 154, 63 S.E. 2d 128. Usually, an implied permission arises from a course of conduct of the parties over a period of time *prior* to the use in question. Alabama Farm Bureau Mutual Casualty Insurance Company v. Robinson, 269 Ala. 346, 113 So.2d 140."

■ We do not find substantial evidence in the record of this case sufficient to have supported a jury submission of implied permission. In particular, there is no showing of "a course of conduct of both of the parties over a period of time prior to the use in question" involving any use of the automobile by Mrs. Moore with Rushton's *implied* permission. It is indisputably clear from the evidence that she used the vehicle only twice before the collision, and that in both instances the use was with Rushton's *express* consent and at his direction, and primarily involved his own purpose and benefit—the purchase of housecleaning supplies.

Furthermore, it was not contended on behalf of defendants in the trial of the case that Mrs. Moore took and used the car with Rushton's implied permission or passive acquiescence. In presently arguing

that Instruction No. 2 should have submitted that issue, appellant presents a theory entirely different from defendants' trial theory. The evidence in its entirety, as it related to the use of the car on the particular evening, was confined to the question whether such use was authorized by Rushton's *express* permission. On the one hand it was Mrs. Moore's testimony that Rushton gave her express permission by giving her the key and telling her she could take and use the car. On the other hand Rushton not only denied that he had given her such permission and mechanical means to drive the car, but also testified that she took it without his consent or knowledge. Thus the only question for the jury to determine under that evidence was whether it should believe Mrs. Moore when she said that Rushton gave her the key and told her to take the car or whether to believe Rushton's denial of those statements and his testimony that she took and drove the car without his permission.

■ In this situation the trial court properly narrowed the issue submitted by the instructions to the question of whether or not there was express permission. To have enlarged the submission by including an issue of implied permission would have given the jury leave to disregard and to contradict the testimony of the only witnesses who had knowledge of the circumstances bearing on the question. This, in our opinion, would have permitted the jury to reach a verdict, by speculation and conjecture, which would have been directly contrary to the testimony of each of the only two people who knew and testified what happened at the Rushton home on the night in question. It is basic law that the court shall instruct only on issues made by the pleadings and supported by the evidence, and that instructions must be within and no wider in scope than the pleadings and the evidence. *27 Mo.Digest, Trial,* ■ It is equally fundamental that an instruction is improper when it permits the jury to reach a verdict by speculation

and conjecture. Putnam v. Unionville Granite Works, Mo.App., 122 S.W.2d 389.

We rule that Instruction No. 2 is not erroneous. This conclusion is firmly supported by two former decisions of this court. In Smith v. Sickinger, Mo.App., *221 S.W. 779,* we ruled that the trial court properly refused an instruction which contradicted the evidence of both parties. And, in Clark v. Meriwether, Mo.App., 123 S.W. 2d 603, we approved the trial court's refusal of an instruction which presented a different theory than that upon which the case was tried.

The judgment is affirmed.

HOWARD, P. J., concurs.

MORGAN, J., not participating because not a member of the Court when the cause was submitted.