ON APPLICATION FOR REHEARING
ADAMS, Justice.
On application for rehearing the original opinion is withdrawn and the following opinion is substituted.
The defendants, Mary Ward and James Michael Morris, appeal from a summary judgment for the defendant, Universal Underwriters Insurance Company (“Universal”). The trial court held that Michael Morris, a former employee of the insured, Madison Square Chrysler Plymouth (“Madison Square”), had acted outside the scope of his duties and was, therefore, not covered by Universal’s insurance policy when he was involved in an automobile accident that killed Bobbie Ward. We affirm.
Thomas C. Younger, trial judge in the Circuit Court for Madison County, Alabama, entered the following findings of fact:
“In December, 1985, Morris was hired as a salesman by Madison Square, which is a new and used car dealership in Huntsville, Alabama. He was hired by Bill Vandiver ..., the sales manager. At that time, Morris had no valid Alabama driver’s license because of a suspension for driving under the influence of intoxicating beverages. Because of this, Morris was specifically forbidden to operate any automobile owned by Madison Square. On January 1, 1986, Morris, while operating a vehicle not owned by Madison Square, was arrested for and subsequently entered a plea of guilty of driving under the influence. Consequently, the prohibition against him operating any automobile owned by Madison Square continued.
*152 “On February 13, 1986, Morris negotiated with Vandiver to purchase a 1967 Chevrolet Impala automobile owned by Madison Square. An agreement was reached whereby Morris would buy the automobile for the sum of $400.00 plus tax of $13.00. Such sum was to be paid out of an expected income tax refund due to Morris or from future wage payments which he would earn as a salesman at Madison Square. Until the total of $413.00 was paid by Morris, the Chevrolet was to remain parked on the back lot at Madison Square and Morris understood that he was not to drive the automobile until the price was paid. No money was ever paid by Morris to Madison Square. The Chevrolet was not driven by Morris after that date and prior to March 8, 1986. Morris continued in the employ of Madison Square through March 8, 1986, following which he never returned to work.
“On March 8, 1986, Morris was to pick up his son in Decatur for a weekend visit. He attempted to arrange transportation for that purpose throughout the day. Being unsuccessful in his effort, at approximately 6:00 to 6:30 P.M., closing time at Madison Square being at 6:00 P.M., Morris states that he walked by Vandiver’s office, where he saw Vandi-ver talking to two or three salesmen. Morris says that he shook the keys to the Chevrolet and that as he did so Vandiver looked up, but made no acknowledgement of Morris or his actions. Vandiver states that he never saw Morris make this gesture and never changed his earlier prohibition of Morris driving Madison Square automobiles, including the Chevrolet. Morris did not ask for nor receive permission to operate the Chevrolet from any employee of Madison Square. Morris then drove the Chevrolet off the Madison Square lot, to Decatur where he picked up his son and later, back to Huntsville.
“On Sunday, March 9, 1986, Morris spent the day with his son and a friend doing personal things. He performed no duly for Madison Square that day. Madison Square was open for business. During the day, Morris consumed alcoholic beverages. Late on the afternoon of March 9, 1986, while operating the Chevrolet westbound on Bob Wallace Avenue in Huntsville, Alabama, Morris was involved in an automobile accident resulting in the death of Bobbie Lane Ward. The administratrix filed suit against Morris, Madison Square and fictitious parties in the Circuit Court of Madison County, Alabama_”
The following issues are raised on appeal:
1. Whether the trial court erred in granting summary judgment on the claim that Morris had neither express nor implied permission to drive the automobile and was thereby not covered under the “Auto Hazard” portion of Madison Square’s insurance policy.
2. Whether the trial court erred in granting summary judgment on the claim that Morris was not covered under the “umbrella” portion of Madison Square’s insurance policy.
This appeal involves two separate parts of an insurance agreement. Judge Younger characterized the relevant sections thusty:
“Form 500 (Garage Insurance) provides basic primary insurance to Madison Square and to certain others who fit within the definition of an insured for limited hazards. Pertinent here is only the ‘AUTO HAZARD.’ Form 980 (Umbrella) provides excess insurance for certain described hazards under certain circumstances.
“The first inquiry under Form 500 is whether Morris fits within the definition of an insured. To be an insured under that coverage of the policy, Morris must have been an employee of Madison Square and must have been operating the vehicle owned by Madison Square (the 1967 Chevrolet) within the scope of permission granted to him by Madison Square.”
The trial court held that Morris was not covered under Form 500 because he did not have permission to operate the vehicle.
*153 Ward argues that genuine issues of material fact exist on the question of whether Morris had either express or implied permission to drive the automobile. Ward cites a number of cases for that proposition. We agree that where “permission” is required, it may be either express or implied. See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Robinson, 269 Ala. 346, 113 So.2d 140 (1959); Harrison v. Densmore, 279 Ala. 190, 183 So.2d 787 (1966); Royal Indemnity Co. v. Pearson, 287 Ala. 1, 246 So.2d 652 (1971). The facts of the instant case do not support any need for our indulgence of an argument that Morris had express permission to drive the automobile. The record indicates unequivocally that Morris had no express permission, but, rather, that he was forbidden to drive any of Madison Square’s automobiles. Portions of Morris’s deposition reveal the following:
“Q. I think you said that the conversation was or instructions were as a result of your divulging that information that you had a previous DUI that you were not to drive the cars as long as your license were [sic] suspended or revoked, is that correct?
“A. That’s correct.
[[Image here]]
“Q. At any time before March the 8th, 1986, did you ask Billy Vandiver to allow you to drive the ’67 Impala?
[[Image here]]
“A. I don’t think so.
“Q. As a matter of fact, you were specifically prohibited from driving that car, is that correct?
“A. Yes.
“Q. Did you understand that the ’67 Impala was included in the condition of your employment of not driving a Madison Square car?
“A. Yes.
“Q. My question is this. Could you take a new car, for instance, and use that new car for any purpose? Was the agreement between you and Mr. Vandi-ver that you could not drive, not just the Impala, but any other car?
“A. Right. I wasn’t to drive any automobile.
“Q. What about your ability to drive other cars to show customers? What was that agreement?
“A. I was not to drive any automobile. “Q. Under any circumstances?
“A. No, not for showing purposes or anything else.
“Q. Have you ever gone to Mr. Vandi-ver on any occasion to ask for permission to drive a new car prior to March the 8th?
“A. No, sir, not that I recall.”
Ward argues that, alternatively, Morris had implied permission to drive the automobile. In Alabama Farm Bureau Mutual Casualty Insurance Co. v. Billups, 366 So.2d 1109, 1110 (Ala.1979), this Court addressed the matter of implied permission. There, this Court held:
“ ‘[I]n order to support an inference that one had implied permission to use the automobile of another for his own pleasure and purposes, there must be a course of conduct engaged in by the parties over a period of time prior to the use in question, or, if in the first instance, there must be particular circumstances, to justify an inference of implied permission.’ ”
Quoting Alabama Farm Bureau Mutual Casualty Ins. Co. v. Robinson, 269 Ala. 346, 113 So.2d 140 [1959].
Ward maintains that by keeping silent when Morris shook the keys in his presence, Vandiver implicitly gave Morris permission to drive the automobile. We disagree; this assertion has no support in the record.
There is no question that Morris did not, have implied permission to use the automobile through a course of conduct. (See excerpts from Morris’s deposition, supra.) Any arguments that Morris had implied permission under the particular circumstances of this case must also fail. Again, quoting Morris’s deposition:
“Q. And what time was it that you went to Bill Vandiver’s office?
“A. It would have been right at quitting time, five minutes after or,ten minutes after.
*154 Q. I believe you indicated there were two or three other people in the office?
“A. Yes.
“Q. Is that correct?
“A. Yes.
“Q. And were they conducting business at that time?
“A. I think they were working deals, yes.
[[Image here]]
“Q. And I believe you indicated you just came to the door and did not go into the office, is that correct?
“A. Correct.
“Q. And you jiggled the keys, is that correct?
“A. Right.
“Q. And Bill Vandiver did not make any reply verbally to you to [sic] jingling the keys, is that correct?
“A. I don’t think so.
“Q. Did he make any reply by motion of his head in any way?
“A. He looked up and I jangled the keys. I couldn’t tell you that, yes or no, he didn’t know.
“Q. You don’t recall him making any motion, would that be a fair statement?
“A. I think that would be a fair statement.
[[Image here]]
“Q. And you did not indicate in any way to Mr. Vandiver that you were taking the car off the lot other than jingling the keys, is that correct?
“A. That’s correct.
“Q. Did you talk to any other supervisors at Madison Square Chrysler Plymouth on March the 8th, 1986, concerning the use of the ’67 Impala?
“A. I don’t think so.
“Q. Did you see any other supervisor from the time you left Billy Vandiver’s office until the time you left the car lot?
“A. ... Not to my recollection.
“Q. And you did not ask permission from any other supervisors?
“A. No.”
Defendants argue that the trial court erred in holding that the umbrella provision of the policy did not extend coverage to Morris. The portion of the umbrella section dealing with its coverage provides protection to “any of YOUR partners, paid employees, directors, executive officers, stockholders, while acting within the scope of their duties.” Morris was not a partner, paid employee, director, executive officer, or stockholder acting within the scope of his duty. Therefore, he was not an insured.
We conclude that, by the plain language of this section, it is evident that in order for Morris to be “an insured” under it, he would have to have been acting within the scope of his duties. This was clearly not the case.
Finally, defendants argue that Universal has cited no authority in its brief in support of its position on the issue of coverage under the umbrella section. Ward cites Salter v. AmSouth Bank, N.A., 487 So.2d 927, 929 (Ala.Civ.App.1985), for the proposition that on appeal, where no authority for a contention is cited, “the effect is the same as if no argument has been made” (citing Super X Drugs of Alabama, Inc. v. Martz, 51 Ala.App. 370, 286 So.2d 47 (1973)) and for the proposition that “[a]n appellant’s contentions must be supported by authority and the reasons for the contentions” (citing Rule 28(a)(5), Ala.R.App. P.). We find no merit to this argument. In the present case, a proper resolution of the issues involved could be made by an application of the plain meaning as found within the four corners of the policy. The summary judgment was also proper as to the umbrella provision.
The judgment of the trial court is due to be, and it hereby is, affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED; APPLICATION DENIED.
HORNSBY, C.J., and JONES, SHORES and STEAGALL, JJ., concur.