**AMERICAN MOTORISTS INSURANCE COMPANY, Appellee,**

v.

**Richard A. SAMSON, Richard C. Samson, Dakota Rental and Sales, Inc., Rhonda L. Turner, a minor by and through her parent and natural guardian, LeRoy Turner, and LeRoy Turner, Individually, Appellants.**

No. 78–1805.

United States Court of Appeals, Eighth Circuit.

Submitted April 19, 1979.

Decided April 24, 1979.

---

Wickham Corwin, Conmy, Feste & Bossart, Ltd., Fargo, N. D., for appellants. Timothy Q. Davies, Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, N. D., and Maurice G. McCormick, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, N. D., on brief.

James L. Lamb, Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Ltd., Grand Forks, N. D., for appellee. Gerald J. Haga, Grand Forks, N. D., on brief.

Before ROSS, STEPHENSON and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This diversity case is before us on an appeal by defendants from a declaratory judgment in favor of the plaintiff by the United States District Court for the District of North Dakota (The Honorable Paul Benson, Chief Judge). The district court held that plaintiff, American Motorists Insurance Company, is not obligated to the defendants on the basis of a standard automobile policy issued by plaintiff to AVCO Financial Services of North Dakota, a North Dakota corporation which maintains an office in the City of Fargo and which is engaged in the business of making consumer loans, including loans secured by liens on automobiles.[1] The suit arises out of an

---

1. The complaint of the insurance company alleges that the policy was issued to AVCO Financial Services of North Dakota, which has been mentioned. There is some suggestion in the record, however, that AVCO may be a subsidiary of a larger corporation, and that the policy here involved was actually issued to the parent company but covered its subsidiaries. The matter is not material, and we will proceed in line with the allegation of the complaint and assume that AVCO was in fact the insured named in the policy.

accident that occurred on October 4, 1973 in Fargo which involved a Dodge Charger automobile, which in general was covered by the policy issued to AVCO, and a bicycle being operated at the time by Rhonda L. Turner, a minor, whose father and natural guardian is LeRoy Turner. Ms. Turner was injured in the accident. The automobile was being operated at the time by another minor, Richard A. or "Rick" Samson, the son of Richard C. Samson, who at the time was an employee of a used car sales and automobile rental business identified as Thrifty Rent-A-Car of Fargo, Inc., hereinafter referred to as "Thrifty."[2] After the accident Thrifty was succeeded in business by another North Dakota corporation known as Dakota Rental and Sales, Inc. (Dakota).

In the course of its business AVCO has occasion from time to time to foreclose liens on or repossess vehicles on which it has loaned money and to resell them. Prior to October 3, 1973 AVCO had had dealings with Thrifty, and the local manager of AVCO, Gary Wendel, was well acquainted with Samson.

AVCO had made a loan secured by a lien on the Dodge Charger here involved; the debtor had defaulted on the obligation, and by October 3, 1973 AVCO had rightfully repossessed the vehicle and had a right to sell it. On that date Wendel took the car to the Thrifty lot and discussed with Samson the purchase of the vehicle by Thrifty. Samson was not prepared to purchase the car for Thrifty but suggested that it be left on the lot "on consignment," and that Thrifty would undertake to sell the car for AVCO. There may be some question as to the restrictions placed on the use of the car while it was in the possession of Thrifty; Wendel did advise Samson that "kids" should not be permitted to "hot rod" the car.

It seems evident that Samson was interested in purchasing the car personally; he drove it to his home on the evening of October 3, kept it there overnight, and left it there when he went back to work on October 4. He does not appear to have either given his son Rick permission to drive the car or to have forbidden him to drive it. The district court found that Rick was a relatively inexperienced driver.

In the course of the day Rick asked his mother (not his father) for permission to drive the car to the barbershop so that he might get a haircut. Mrs. Samson granted the permission and Rick started on his journey in the course of which he collided with the bicycle being ridden by the Turner girl.

After the accident Mr. Samson returned the car to AVCO and made a bid on it that AVCO declined to accept, and AVCO resumed possession of the car which it disposed of later. Samson did not advise AVCO of the happening of the accident, and AVCO and the insurance company did not learn of the occurrence until more than three years after the accident occurred.

In due course Rhonda Turner and her father filed suit in the District Court of Cass County, North Dakota, a suit in which both the Samsons, AVCO, and Dakota, which by that time had succeeded Thrifty in business, were all named as defendants. Rhonda Turner sought compensation for her own injuries, and her father sought compensation for the damages that he had sustained as a result of his daughter's injuries. The underlying theory of the Turners was that the accident was the result of negligence on the part of Rick Samson in the operation of the vehicle; that when the accident occurred he was "test driving" the vehicle, and that not only he but also all of the other defendants were liable for the damages proximately resulting from the alleged negligence of Rick.

It is inferable that in due course AVCO called on the insurance company to provide it with a defense to the action in the state court and to pay up to the limits of the policy any judgment that the Turners might obtain against the named insured. It also appears that the other parties to the

---

2. In his memorandum opinion the district judge referred to Thrifty as "Thrifty Auto Sales." The difference in nomenclature is not important to this litigation.

state court litigation took the position that the Samsons, father and son, and Dakota were "omnibus insureds" under the policy and were entitled to the policy protection to the same extent as was AVCO.

Thereafter, the insurance company commenced this action against the Samsons, the Turners, and Dakota. While admitting its policy obligations to AVCO, which was not named as a party defendant, the defendant denied liability to any of the other parties and prayed for a declaratory judgment to the effect that no such liability existed. 28 U.S.C. § 2201. Federal diversity jurisdiction is established.

The policy issued by the company contained an "extended coverage" or "omnibus insured" clause which included in the definition of "insured" not only the named insured but also any person or organization legally responsible for the use of the vehicle provided that the actual use at the time of the accident was "by the named insured or with his permission."

In its complaint the plaintiff denied that Rick Samson was operating the car with the permission of AVCO, either express or implied, and the plaintiff further alleged reliance in part on an exclusion appearing in the "extended coverage" or "omnibus" clause to the effect that the clause in question would not apply to any person or organization, or to any agent or employee thereof, operating "an automobile sales agency, repair shop, service station, storage garage or public parking place with respect to any occurrence arising out of the operation" of the vehicle. And it was alleged that at the time of the accident Rick Samson and his father were operating an automobile sales agency.

The plaintiff prayed for appropriate declaratory relief and asked that the action pending in the state court be stayed until this case should be decided.

The several defendants filed answers, and the Samsons filed a counterclaim specifically claiming policy protection with respect to the Samson-Turner accident and subsequent suit. The Samsons, the Turners, and Dakota have in general taken common

ground in resisting the contentions of the insurance company, and, indeed, they have filed a consolidated brief in connection with this appeal.

However, the Turners, in their answer, invoked another policy provision which extended coverage to any vehicle that had been repossessed by AVCO during the course of the repossession or "while being maintained or used in connection with resale following such repossession." The Turners recognized, however, that that extension of coverage did not apply to a repossessed vehicle "while being used for other business purposes or for personal, pleasure or family purposes."

The position of the defendants is that when Mr. Wendel, acting for AVCO, turned the car over to Mr. Samson, acting for Thrifty, Wendel gave at least implied consent for the test driving of the car by prospective purchasers without a representative of Thrifty being present in the car, and that in the course of his trip in the car Rick was not just going to get a haircut but was testing the car to determine whether it would be suitable for the purpose for which it might be desired.

The case having come to issue and made ready for trial, it was tried before Judge Benson without a jury in 1978. On September 5, 1978 the district judge filed a memorandum opinion incorporating his findings of fact and conclusions of law. Ultimately, he found and concluded that the defendants were not entitled to the benefits or protection of the policy's omnibus clause, and that the plaintiff insur ʼce company was entitled to the declaratory relief sought. Judgment having been entered, this appeal followed.

■ We start with the proposition that in this nonjury case the factual findings of the district court must be accepted by us unless clearly erroneous, Fed.R.Civ.P. 52(a). Next, since this is a diversity case, the rights of the parties are governed by the law of North Dakota and with respect to that law opinions of an experienced local district judge are entitled to great weight.

*Alsup v. Garvin-Wienke, Inc.*, 579 F.2d 461 (8th Cir. 1978); *Green v. Am. Broadcasting Companies, Inc.*, 572 F.2d 628 (8th Cir. 1978); *Gatzemeyer v. Vogel*, 544 F.2d 988 (8th Cir. 1976).

■ Standard automobile policies in use today and approved by state regulatory agencies include extended coverage or omnibus insured clauses which afford protection not only to the named insured but also to other persons operating an insured vehicle with the express or implied permission of the named insured. 7 Am.Jur.2d, Automobile Insurance, § 109 *et seq.* The permission of the named insured extended to the original or first permittee may or may not be broad enough to authorize the latter to delegate his permission to a second permittee or to permit a second permittee to delegate his permission to a third permittee. The problem presented in a particular case can be a difficult one. *See* 7 Am.Jur.2d, *supra,* § 116 *et seq.; see also Krebsbach v. Miller*, 22 Wis.2d 171, 125 N.W.2d 408, 4 A.L.R.3d 1 (1963), and extensive annotation beginning at 4 A.L.R.3d 10.

■ In this case Judge Benson was of the opinion that the governing law of North Dakota in this area was accurately stated by the late Judge Van Oosterhout writing for this court a number of years ago in *Nat'l Farmers Union Property & Cas. Co. v. Lukins*, 329 F.2d 564 (8th Cir. 1964). Judge Benson construed *Lukins* as holding that a "second permittee" is covered by a policy's omnibus clause where the "first permittee" is present in the car at the time of the accident or where the operation of the vehicle by the second permittee is serving some purpose of the original permittee. That interpretation of *Lukins* is clearly justified, 329 F.2d at 565–66.

■ *Citing Nat'l Farmers Union Property & Cas. Co. v. Ronholm*, 153 N.W.2d 322 (N.D.1967), the district judge held that under an omnibus clause permission may be express or implied, and that when AVCO entrusted the vehicle to Thrifty "there was an implied permission that Thrifty would use the automobile in the manner usually used to effectuate a sale," including the granting by Thrifty of permission to a prospective purchaser to permit the test driving of the car without the presence of an employee of Thrifty. "Thus, the permission given Thrifty extended to use by a third party if that third party's use was consistent with the permission given by the named insured."

The trial court found that the older Samson in taking the car home "to test it and show it to his family was serving a purpose of the original permittee," and that the use of the car for those purposes "was within the scope of AVCO's permission, for the test drive facilitated the sale of the automobile." And the district judge found that the older Samson was a "second permittee."

However, Judge Benson was not willing to extend the protection of the policy to Rick Samson or to anyone else on the basis of Rick's operation of the car with his mother's permission. The judge said:

The permission given Richard C. Samson, however, did not extend to the use of the automobile by his son, Richard A. Samson. A second permittee may grant permission to a third permittee to use a vehicle, and that permission will be effective to render the third permittee an insured if the permission was within the scope of that granted the second permittee. But the necessary permission from the second permittee, Richard C. Samson, to the alleged third permittee, Richard A. Samson, is not present here.

There was no express permission, for Richard C. Samson never gave Richard A. Samson specific permission to drive the automobile to the barbershop to get a haircut. The permission came from Mrs. Samson, and no direct chain of permission to drive the automobile from Mr. Samson to Mrs. Samson to Richard A. Samson has been shown.

Neither was there an implied permission from Richard C. Samson to Richard A. Samson to drive the automobile. It is clear to the court from all the evidence in the case that Richard C. Samson was personally interested in buying the auto-

mobile for use as a family car, and his purpose in bringing it home was to test drive it himself and *show* it to his family. His sixteen year old son was an inexperienced driver and not a prospective purchaser. Furthermore, even if it had been Richard C. Samson's purpose to allow his family, including his sixteen year old son, to test drive the automobile, the purpose of the drive to the barbershop was to get a haircut and the AVCO car was used because no other car was available.

Having found that the operation of the car by Rick Samson was not within the basic protection of the omnibus clause, the district court found it unnecessary to pass upon the insurance company's contention based on the exclusion appearing in that clause, which exclusion has been mentioned.

The particular policy provision relied on by the Turners in their answer was not mentioned by Judge Benson, and it may not have been urged upon him in the course of the proceedings in the district court. However, if it be assumed that the judge's finding as to the nature of the use of the car by young Samson is valid, the provision in question is of no benefit to the Turners or to the other defendants in this case.

We have given careful consideration to the record, to the briefs, and to the arguments of counsel. We can add nothing of value to what Judge Benson has had to say in his opinion from which we have quoted. His findings of fact have adequate evidentiary support and certainly are not "clearly erroneous," and his conclusions of law were certainly permissible ones.

The judgment of the district court is affirmed, principally on the basis of the opinion of that court.